James OWENS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 16S00–8702–CR–181.

Supreme Court of Indiana.

Oct. 20, 1989.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant James Owens was convicted following a jury trial of two counts of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1985 Repl.), two counts of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.), and one count of attempted voluntary manslaughter, a class B felony. Ind.Code §§ 35–41–5–1, 35–42–1–3 (Burns 1985 Repl.). The trial court sentenced Owens to two years for each theft conviction, ten years for each burglary, and twenty years for the attempted voluntary manslaughter. The court ordered consecutive sentences, for a total of forty-four years in prison.

Owens raises four issues on direct appeal:

I.  Whether the evidence was sufficient to support the attempted voluntary manslaughter conviction;

II.  Whether the trial court erred by refusing Owens' tendered instructions on criminal trespass and criminal mischief as lessor included offenses of burglary;

III.  Whether the trial court erred by refusing to give Owens' tendered instruction on criminal conversion as a lesser included offense of theft; and

IV.  Whether the trial court erred by imposing consecutive sentences and enhancing Owens' sentence for attempted voluntary manslaughter.

The evidence supporting the jury's verdict reveals that on March 11, 1986, at approximately 7:30 in the evening Owens and two friends, Kevin Arnett and Eric Bulich, went out for a drive. Owens said that he knew of two places where they could get some guns that they could sell. The three men proceeded on highway 421 toward Greensburg, Indiana, until Owens directed Bulich, the driver, to stop at a house owned by William Snyder. Owens and Arnett approached the house. Owens pried open the front door, entered the house, and exited about five minutes later carrying two guns. Owens then directed Bulich to a trailer on Lake Loretta owned by Rock Kirtman. Owens stated they could get more guns and some money from the trailer. When they arrived at the trail-

er, Owens pried open the door, went inside, and returned with a gun and a checkbook.

Next, the men drove to the Ranch Supermarket in Greensburg where Bulich cashed a check and purchased cigarettes. Arnett moved into the driver's seat, and they proceeded to a nearby laundromat where Owens got out to make a phone call. After Owens returned to the car, Arnett pulled out in front of James Krise, nearly causing a collision.

Krise followed the men to the intersection of highways 421 and 74. At the intersection, Krise pulled up alongside the three and asked them if they had a problem. Arnett said no and drove on. Krise continued to follow them. As they drove, Owens, who was seated in the back seat, loaded one of the guns and said that he was "going to get him [Krise] off the ass end of [the] car one way or another." Next, he asked Bulich, who was in the front seat, to move forward. Owens leaned out the window and shot at Krise's truck, which was about thirty feet behind.

Krise followed the men a short distance to record the license plate number. He then flagged down a police car and told the officers that a man in a red and white Dodge had just shot at him. Meanwhile, the three men proceeded to another house where Owens tried unsuccessfully to sell the guns. Shortly thereafter, all three were arrested.

### I. *Sufficiency of the Evidence*

■ Owens argues that the evidence was insufficient to prove that he harbored a specific intent to kill Krise. When reviewing the sufficiency of the evidence, this Court will not reweigh the evidence nor judge the credibility of witnesses. We will look to the evidence which supports the verdict and reasonable inferences therefrom. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229. One's intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Jones v. State* (1989), Ind., 536 N.E.2d 267. Firing a gun in the direction of an individual is

substantial evidence from which a jury may infer intent to kill. *See id.; Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89.

Both Arnett and Krise testified that Owens shot in the direction of Krise's vehicle. Physical evidence was introduced to corroborate Krise's testimony that one of the shots pierced the passenger side of his windshield, passed through the interior, and shattered his back window. Arnett also testified that after the shooting Owens said that he hoped that "the son of a bitch [was] dead." This was sufficient evidence to support a jury finding that Owens intended to kill Krise.

### II. *Jury Instructions*

■ Owens asserts that the trial court erred by refusing his tendered instructions on criminal trespass and criminal mischief as lesser included offenses of burglary and his tendered instruction on criminal conversion as a lesser included offense of theft. The trial court is required to instruct on a lesser included offense only if both parts of a two-step test are met. The first step may be satisfied in either of two ways. An offense may be included if all the statutory elements of the lesser offense are inherently part of the statutory definition of the greater offense. In the alternative, an offense may be included if the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime. *Jones v. State* (1986), Ind., 491 N.E.2d 980.

■ The second step of the analysis requires that the evidence at trial justify giving the instruction. The evidence presented must establish all the elements of the lesser included offenses and reveal a serious dispute on the element(s) which distinguish the charged offense from the lesser included offense. If the evidence supporting the charged offense is compelling and without serious conflict, then the trial court is justified in refusing the lesser included instruction. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208.

■ The informations charging Owens with burglary were carefully drafted to

allege only burglary and not the lesser offenses of criminal trespass and criminal mischief. They included neither the lack of "contractual interest" element necessary for an instruction on criminal trespass, nor the "damage to property" element necessary for an instruction on criminal mischief. Ind.Code §§ 35–43–1–2, 35–43–2–2 (Burns 1985 Repl.). Consequently, Owens could not inject the lesser charges by way of a jury instruction.

■ As for his tendered instruction on criminal conversion, Owens argues that all of the elements of criminal conversion were included in the charging document. He says the evidence failed to support an inference of theft because it did not establish the element of "intent to deprive the other person of any part of [the] value or use" of the property. Ind.Code § 35–43–4–2 (Burns 1985 Repl.).

■ All of the elements of criminal conversion were included in the charging document. The evidence, however, did not reveal any legitimate dispute at trial about the element of "intent to deprive the other person of any part of the value or use" of the property. Arnett testified that after the shooting incident, the men went to a house where Owens unsuccessfully attempted to sell the guns he had stolen from Snyder and Kirtman. That attempt to sell the guns clearly manifested an intent to deprive the owners of the value and use of their property. The trial court properly denied Owen's tendered instruction on criminal conversion.

### III. *Sentencing*

■ Owens argues that the trial court erred by considering improper aggravating circumstances as a basis for imposing consecutive sentences and enhancing his sentence for attempted voluntary manslaughter. Indiana Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances the record must include a "statement of the court's reasons for selecting the sentence that it imposes." *Seeley v. State* (1987), Ind., 514 N.E.2d 1268, 1269. When a trial court uses an improper aggravating circumstance to enhance a sentence, this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed. *See Forrester v. State* (1982), Ind., 440 N.E.2d 475; *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607.

Here, the trial court articulated three aggravating factors which contributed to Owens' sentence: lack of remorse, past criminal record, and the seriousness of the offenses.

■ Owens first challenges using lack of remorse as an aggravator. There is no general prohibition against using lack of remorse as a sentencing factor. *Brooks v. State* (1986), Ind., 497 N.E.2d 210. At sentencing, counsel for Owens expressed his client's remorse for the thefts, but not for the robberies or for the attempted voluntary manslaughter. The trial court did not err by considering lack of remorse for those crimes as an aggravating factor.

■ Next, Owens asserts that the judge erroneously considered his expunged juvenile record. Indiana law requires that if a court grants an expungement petition for juvenile records it "shall order each law enforcement agency and each person who provided treatment for the child under an order of the court to send that person's records to the court." Ind.Code § 31–6–8–2(d) (Burns 1987 Repl.). Once the records reach the court, they "may be destroyed or given to the person to whom they pertain." Ind.Code § 31–6–8–2(e) (Burns 1987 Repl.) Properly implemented, these procedures render expunged juvenile records unavailable to be considered as aggravating sentencing factors.

■ A juvenile probation officer testified at Owens' sentencing hearing that before the crimes in question were committed Owens had obtained an expungement order from the same trial court. He sought the expungement so that he could apply for military service. She further stated that the copy of Owens' record in her office was destroyed pursuant to the expungement order. The preparer of the presentence report testified, however, that he had obtained a copy of Owens' juvenile record from the prosecuting attorney's office. After this testimony, the trial court stated:

Well I'll say this before we go on any further, I understand the objection to that information being in the presentence report for a variety of reasons I'm not going to disregard it ... I'm satisfied that the order of expungement first of all did not extend to ... beyond the juvenile office so if Mr. Baldwin obtained this information from other sources I think he's entitled to use it and finally I'm also satisfied that the order of expungement was essentially a conditional one that is it was granted to Mr. Owens for the purpose of getting him into the service and once that failed although the record was destroyed and couldn't be resurrected I believe that we're entitled to consider that ... consider his juvenile adjudication at a later date and will do so today.

Although the expungement order itself is not a part of the appellate record, Indiana Code § 31–6–8–2 requires that such an order direct all law enforcement agencies to send the juvenile records to the court for destruction or disposition to Owens. There are no procedures for partial or conditional expungement. It was error to consider the juvenile record as an aggravating factor in the sentencing decision.

The remaining aggravating circumstances are inadequate to support the sentence imposed. Owens' prior criminal convictions consisted of a misdemeanor marijuana possession and possession of alcohol by a minor, and lack of remorse by a person who maintains his innocence must be regarded as a modest aggravator. While attempted voluntary manslaughter is by definition a serious crime, the trial court did not specify any circumstances which rendered this particular offense more serious than other such attempts such that it warrants more than the standard sentence set by the legislature. Nevertheless, it is apparent that attempted manslaughter on a public highway from a moving vehicle in which there are other passengers carries with it greater potential for injury to others than would usually be the case.

We conclude that these aggravating circumstances are adequate to support consecutive sentences but not both consecutive sentences and an enhanced term. Accord-ingly, we remand with instructions to impose a standard term of ten years for attempted voluntary manslaughter. Ind. Sentence Review Rule 2. In all other respects, we affirm the judgment of the trial court.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J. dissents without opinion.