**Carol J. SMITH, Appellant (Petitioner),**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–9407–PC–426.**

Court of Appeals of Indiana.

Aug. 31, 1995.

Rehearing Denied Oct. 11, 1995.

Transfer Denied Dec. 14, 1995.

*Archbold Ladder Co.* (1993) Ind., 605 N.E.2d 175.

⚷354(1)

Susan K. Carpenter, Public Defender, Amy E. Karozos, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for appellee.

1. I.C. 35–41–5–2(a) (Burns Code Ed.Repl.1994).

2. The murder charge alleged that Smith knowingly and intentionally killed the victim. I.C. 35–42–1–1(1) (Burns Code Ed.Repl.1994). It also charged that she aided and abetted in the commission of the murder. I.C. 35–41–2–4 (Burns Code Ed.Repl.1994).

## OPINION

SULLIVAN, Judge.

Carol J. Smith (Smith) appeals the denial of her petition for post-conviction relief following convictions for conspiracy to commit murder,[1] a class A felony, and murder.[2]

We affirm the trial court's determinations, and conclude that the post-conviction court did not err in refusing to grant Smith's petition.

Smith presents three issues for our review, which we restate as follows:

(1) whether the trial court improperly sentenced her;

(2) whether she was denied effective trial and appellate counsel;

(3) whether her convictions for murder and conspiracy to commit murder violate federal and state constitutional double jeopardy provisions.

A jury convicted Smith of murder and conspiracy to commit murder, and the trial court sentenced her to forty years upon each count to be served consecutively. Our Supreme Court affirmed both convictions on direct appeal, *Smith v. State* (1983) Ind., 455 N.E.2d 346,[3] setting forth the following facts most favorable to the verdict:

"[D]uring February of 1980, [Smith] made plans to kill the man she was living with, James Furnish [ (Furnish) ]. She discussed these plans with her daughter's boyfriend, Willie Keown [ (Keown) ]. She told Keown that she wanted to kill Furnish because he was beating up on her and one daughter, Candy, and that he had threatened to kill her. She also told Keown that Furnish had raped her other daughter, Dove Annette Smith [ (Dove Annette) ], whom Keown was dating at that time. [Smith] promised Keown a place to live, a

3. On November 13, 1981, Smith's trial counsel filed a Belated Motion to Correct Errors on Smith's behalf, which the trial court denied. A different attorney represented Smith upon her direct appeal to our Supreme Court.

car, and some of the insurance money if he helped her kill Furnish.

On February 24, 1980, there was an argument between [Smith] and Furnish. Furnish threatened to kill [Smith] and her daughters, and the police were eventually called. After this, [Smith] and her daughters temporarily moved out of Furnish's house. There were further discussions between [Smith] and Keown about the planned murder, and [Smith] gave Keown some money to purchase a gun. Keown bought a rifle from a friend and, eventually, the night of March 14, 1980, was chosen to commit the crime.

On that night, [Smith] led Keown to the bar where Furnish was employed. She told Keown to wait outside until she came out with Furnish for she would keep Furnish in the bar until after it was closed and everyone else was gone. This plan was carried out as Keown shot Furnish when he and [Smith] later came out of the bar. Furnish died from the single gunshot wound. [Smith] helped Keown obtain a job after the shooting. Other evidence showed that [Smith] had attempted to procure aid in killing Furnish on two prior occasions and that she had obtained a fraudulent marriage certificate and used it in an attempt to obtain Furnish's workmen's compensation benefits. In July of 1980, Keown told police of the murder while he was in jail on another charge. Both Keown and [Smith's] daughter, Dove Annette, testified at [Smith's] trial pursuant to plea bargains. Several months after the trial, Keown signed an affidavit recanting his trial testimony.

[Smith] denied any involvement in either the conspiracy or the murder and said she did not discuss any plans with anyone. She said that she went to the bar on the night of the murder to help Furnish and did not know she was followed. She testified that the fraudulent marriage certifi-cate was obtained to keep Furnish's ex-wife from taking all his property. [Smith's] daughter, Candy Smith, testified that she heard Keown and Dove Annette planning to kill Furnish. She said Keown threatened to kill her if she told anyone." *Smith, supra* at 348–49.

Smith was charged with murder pursuant to I.C. 35–41–2–4 [4] because, *inter alia*, she gave Keown money to buy a rifle.[5] The State also charged the fact that Smith gave Keown money to buy the rifle as the overt act required for the conspiracy conviction.

On April 12, 1989, Smith, *pro se*, petitioned for post-conviction relief. The State Public Defender appeared on behalf of Smith, filing an Amended Petition for Post–Conviction Relief on November 5, 1993. After a hearing, the post-conviction court denied Smith's petition. Smith now appeals that denial. We set forth additional facts where deemed appropriate or necessary.

Smith first alleges that the trial court erred when it enhanced her sentence for conspiracy to commit murder and when it imposed consecutive sentences. She next asserts four reasons why her trial counsel was ineffective, one of which is the fact that trial counsel failed to raise the alleged sentencing errors in a Motion to Correct Errors. Smith next contends that the trial court's imposition of multiple sentences for conspiracy to commit murder and for murder violates state and federal constitutional prohibitions against double jeopardy. In addition, Smith argues that her appellate counsel was ineffective because he did not raise ineffective assistance of trial counsel and the above sentencing errors during her direct appeal. To facilitate an orderly disposition, we address each of Smith's ineffective assistance of appellate counsel claims in relationship to the other specific issues presented.

---

**4.** I.C. 35–41–2–4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

 (1) Has not been prosecuted for the offense;

 (2) Has not been convicted of the offense; or

 (3) Has been acquitted of the offense."

**5.** The murder charge alleged that Keown *and* Smith "did knowingly and intentionally kill" Furnish by shooting him with a rifle. Record at 6; *see also infra*, at Sec. III. It also charged that Smith aided and abetted Keown in the commission of the murder by providing him with money with which to purchase the rifle.

## I. ALLEGED SENTENCING ERRORS

■ The trial court sentenced Smith to the presumptive forty years for murder.[6] The court then enhanced her thirty-year presumptive sentence for conspiracy[7] by ten years, and ordered her to serve both sentences consecutively. Smith claims that the trial court erred in imposing such a sentence. The State contends that any claimed sentencing errors were available to Smith at the time of her direct appeal, and that, therefore, she has waived them.[8] Smith responds that she did not present the above arguments upon direct appeal because her trial and appellate counsel rendered ineffective assistance by failing to preserve the alleged sentencing errors in a Motion to Correct Errors, and by not asserting them upon direct appeal. In denying Smith's petition, the post-conviction court agreed with the State that Smith had waived any such argument.

■ Waiver may be a valid defense to a post-conviction petition where, as here, the State properly raises it as a defense. *Robinson v. State* (1981) Ind., 424 N.E.2d 119, 121; *Langley v. State* (1971) 256 Ind. 199, 267 N.E.2d 538, 542; *Kirby v. State* (1990) 4th Dist.Ind.App., 550 N.E.2d 1343, 1345, *trans. denied.* Once the State asserts waiver, the petitioner in a post-conviction action must show a substantial basis which satisfactorily mitigates his or her failure to pursue the issue through normal procedure. *Langley, supra* at 542; *Kirby, supra* at 1345. One such substantial basis is the ineffective assistance of trial or appellate counsel. *Langley, supra* at 542; *Kirby, supra* at 1345. Regardless, if the appeal would have been futile with respect to those alleged errors, the petitioner is not entitled to relief. *Robinson, supra* at 121.

■ Thus, notwithstanding waiver, we address the merits of Smith's assertions. We do so for two reasons. First, in reviewing Smith's ineffective assistance claim, we must determine whether errors which counsel may have committed prejudiced her defense, an examination which itself requires us to determine whether her claims of improper sentencing are meritorious. Second, because Smith has claimed interference with fundamental constitutional rights, we examine the merits of her contentions to determine whether the record discloses fundamental sentencing errors.[9]

The trial court's sentencing statement reads as follows:

"I found no mitigating circumstances here. I find aggravating circumstances here. The aggravating circumstances are the extended period of time that this conspiracy lasted, the aggravating circumstances are also that I see no effort to— and no interest in admitting guilt. You may be innocent, I realize that, but in all probability the Jury having found you guilty beyond a reasonable doubt, you are not innocent. I also consider it an aggravating circumstance that your conspiracy with others did result in the death of another person. The Court will impose a sentence on you for the crime of conspiracy to commit murder of forty (40) years. The Court will impose a sentence upon you for the crime of murder for forty (40) years. These two sentences will be served consecutively." Trial Record at 1008–09.

Smith lodged no objection when the court announced its reasons for the sentence, nor did she request a more detailed statement.

Smith first argues that the trial court relied upon improper factors to justify en-

---

6. *See* I.C. 35–50–2–3 (Burns Code Ed.Repl.1994).

7. As a class A felony per I.C. 35–41–5–2, the presumptive sentence for conspiracy to commit murder is thirty years. I.C. 35–50–2–4 provides that a person who commits a class A felony shall be imprisoned for a fixed term of thirty years, with not more than twenty years added for aggravating circumstances, or not more than ten years subtracted for mitigating circumstances. *See* I.C. 35–41–5–2 (Burns Code Ed.Repl.1994).

8. Issues either raised upon direct appeal or that were available at the time of direct appeal may not be relitigated through the use of a post-conviction petition. *Brown v. State* (1992) 2d Dist.Ind.App., 587 N.E.2d 693.

9. *See, e.g., Kleinrichert v. State* (1973) 260 Ind. 537, 297 N.E.2d 822, 826 (our Supreme Court refused to apply waiver and stated that a court of review " 'cannot ignore a fundamental error which is apparent on the face of the record, such as an incorrect sentence.' ") (quoted in *Duncan v. State* (1981) Ind., 514 N.E.2d 1252, 1254).

hanced and consecutive sentences. Smith also claims that the trial judge's sentencing statement is insufficient to justify imposition of enhanced or consecutive sentences. We disagree with each of Smith's contentions.

■■ It is within the trial court's discretion to determine whether it will increase or decrease a crime's presumptive sentence because of aggravating or mitigating circumstances. *Boyd v. State* (1991) Ind., 564 N.E.2d 519, 524; *Brown v. State* (1987) Ind., 512 N.E.2d 173; *Fuller v. State* (1994) 2d Dist.Ind.App., 639 N.E.2d 344, 349. The criteria listed in I.C. 35–38–1–7.1(b) and (c) merely illustrate the facts which, if found to exist, either mitigate or aggravate an offense. I.C. 35–38–1–7.1(d) authorizes a trial judge to consider factors not specifically enumerated in sections (b) and (c) when determining a sentence. *See, e.g., Wethington v. State* (1990) Ind., 560 N.E.2d 496, 509. We will not revise or reverse a statutorily authorized sentence unless it is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B)(2); *see also Duvall v. State* (1989) Ind., 540 N.E.2d 34, 36; *Fuller, supra* at 349; *Serano v. State* (1990) 1st Dist.Ind. App., 555 N.E.2d 487, 494, *trans. denied.*

Smith first argues that the duration of the conspiracy and the fact that it resulted in a death are facts of the crime that a sentencing court may not consider as aggravating circumstances to support enhanced or consecutive sentences unless the trial court sufficiently explains its reasons for doing so. She also maintains that lack of remorse is an improper aggravating circumstance if it is based upon her maintaining innocence. We first address Smith's contention regarding lack of remorse.

■ A trial court, under proper circumstances, may consider lack of remorse as an aggravating factor in imposing sentence. *Griffin v. California* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, *reh'g denied; Owens v. State* (1989) Ind., 544 N.E.2d 1375, 1378; *Spranger v. State* (1986) Ind., 498 N.E.2d 931; *Brooks v. State* (1986) Ind., 497 N.E.2d 210; *Linger v. State* (1987) 4th Dist. Ind.App., 508 N.E.2d 56, 64. However, in each of those cases, the record unequivocally reflected that "lack of remorse" was in fact one of the aggravating circumstances.[10] Here, the sentencing judge did not cite Smith's "lack of remorse", in those terms, as an aggravating circumstance. He merely cited the fact that Smith showed "no effort to— and no interest in admitting guilt." Trial Record at 1008. The record does not reveal, nor did the judge make a specific finding that, Smith displayed any disdain or recalcitrance. Moreover, the trial judge did not point to any conduct or words which could be construed as the equivalent of "I don't care", as opposed to "I didn't do it." *See Mayberry v. State* (1992) 4th Dist.Ind.App., 605 N.E.2d 244, 247–50 (Miller, J., concurring in part, and dissenting in part); 251 (Sullivan, J., concurring in result); *Watkins v. State* (1991) 1st Dist.Ind.App., 571 N.E.2d 1262, 1270 (Sullivan, J., concurring) ("It is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence. . . . It is not unconscionable, even after conviction, for the individual to respectfully maintain innocence and to imply that the trier of fact was mistaken in the determination of guilt. . . . Without question, a defendant under circumstances which clearly reflect guilt, such as his own admission of the crime, should not be heard to proclaim gross insensitivity to the harm caused to his victim or to society. If his words or conduct are the equivalent of 'I don't care', he has displayed a lack of remorse."). Thus, the fact that Smith

---

**10.** In many of those cases, research reveals that the sentencing court not only specifically found that the defendant displayed a lack of remorse, but the sentencing judge also stated reasons for such a finding. For example, in *Manns v. State* (1994) 4th Dist.Ind.App., 637 N.E.2d 842, 845, the sentencing judge noted:

" 'I have watched you [defendant] every time that you have come into Court and I don't believe there is much remorse there. I think

what little remorse that you have is not a sense of guilt for the accident you caused, but rather a sense of fear of the sentence that you are about to receive and those are two different things. I believe the sentence imposed is the only way to prevent it from happening again.' "

*See also Garrison v. State* (1991) 2d Dist.Ind. App., 575 N.E.2d 700, 704, *trans. denied.*

made no effort to admit guilt is not a valid aggravating circumstance.[11]

We turn now to the other factors the trial judge cited; the length of time the conspiracy lasted before Furnish was killed, and the fact that the conspiracy resulted in Furnish's death. We will affirm if these factors are adequate to support the sentence imposed. *Owens, supra*, 544 N.E.2d at 1378. They are.

■ We disagree with Smith's contention that both factors constitute elements of the crime of conspiracy. Smith is correct insofar as she recognizes that facts comprising a material element of a crime may not constitute an aggravating circumstance for sentencing purposes absent something special about the way in which that element of the crime was committed. *E.g., St. John v. State* (1988) Ind., 523 N.E.2d 1353, 1359; *Townsend v. State* (1986) Ind., 498 N.E.2d 1198, 1201. In such a case, the trial court may consider the "particularized individual circumstances" of the crime's factual elements, and may enhance a sentence if an element is particularly egregious. *Townsend, supra* at 1201; *Green v. State* (1981) Ind., 424 N.E.2d 1014. However, neither the length of time it takes for a conspiracy to accomplish its object offense, nor the fact that the object offense was committed are elements of the crime of conspiracy. Conspiracy has two elements: (1) an agreement with another person to commit the object felony with an intent to commit the felony; and (2) the performance of an overt act in furtherance of the agreement. I.C. 35–41–5–2. The crime of conspiracy is complete upon the agreement and the performance of an overt act in furtherance of the agreement. Thus, the length of time between the overt act and the commission of the underlying felony is of no significance to the elements of

the crime itself. Likewise, there is no requirement that a defendant actually commit or even attempt the object crime to gain a conspiracy conviction. *Hammond v. State* (1992) 5th Dist.Ind.App., 594 N.E.2d 509, *trans. denied.*[12] Accordingly, the conspiracy's duration and the resulting death are not facts comprising elements of the crime of conspiracy to commit murder.

■ Next, the sentencing statement adequately explains the factors the trial court considered in enhancing Smith's sentence and in imposing consecutive sentences. When the trial court exercises its discretionary power to enhance a presumptive sentence, the record must disclose what factors it considered to justify such a sentence. I.C. 35–38–1–3(3) (Burns Code Ed.Repl.1994); *Boyd, supra*, 564 N.E.2d at 524; *St. John, supra*, 523 N.E.2d at 1358; *Maynard v. State* (1987) Ind., 513 N.E.2d 641, 648; *Townsend, supra*, 498 N.E.2d at 1201; *Frappier v. State* (1983) Ind., 448 N.E.2d 1188, 1189; *Dockery v. State* (1987) 4th Dist.Ind. App., 504 N.E.2d 291, 297. Our courts have held that the statement must: (1) identify all of the significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is considered to be mitigating or aggravating; and (3) show that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. *See Boyd, supra* at 519; *St. John, supra* at 1358; *Townsend, supra* at 1201.[13]

■ It is true that, in citing them as aggravating circumstances, the trial judge did not specifically state on the record the reasons why he considered duration and the resulting death to be aggravating circum-

---

11. Our Supreme Court has determined that lack of remorse is at best a "modest aggravator." *Owens, supra*, 544 N.E.2d at 1379. Thus, lack of remorse alone under these circumstances arguably would not justify a ten-year enhancement even had the record supported such a finding.

12. While the overt act required for a conspiracy conviction may constitute an attempt to commit the felony contemplated, such is not always the case.

13. Such a statement is valuable and often necessary for a reviewing court because it reveals the grounds which the trial judge considered when imposing sentence and thus enables the reviewing court to determine the reasonableness of the sentence imposed. *Henderson v. State* (1986) Ind., 489 N.E.2d 68, 71–72; *Page v. State* (1981) Ind., 424 N.E.2d 1021; *Abercrombie v. State* (1981) 275 Ind. 407, 417 N.E.2d 316, 319; *see also Linger, supra*, 508 N.E.2d at 63.

stances. Regardless, "[w]hen the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied." *Henderson v. State* (1986) Ind., 489 N.E.2d 68, 72. *Accord Duvall, supra,* 540 N.E.2d at 36; *Rabadi v. State* (1989) Ind., 541 N.E.2d 271, 277; *Adkins v. State* (1988) Ind., 532 N.E.2d 6, 9; *Chupp v. State* (1987) Ind., 509 N.E.2d 835, 839; *Harris v. State* (1993) 1st Dist.Ind.App., 616 N.E.2d 25, 32, *trans. denied; Kollar v. State* (1990) 3d Dist.Ind.App., 556 N.E.2d 936, 943, *trans. denied; Hunt v. State* (1990) 3d Dist.Ind.App., 550 N.E.2d 838, 845, *trans. denied.*

▇ In a case such as this, it would be pointless to remand for a more specific sentencing statement with regard to each of the two factors considered here because the reasons why they are aggravating circumstances are manifest from the recitation of the factors themselves and are clearly supported by the record. In other words, a review of the facts upon which those determinations were made do not require us to speculate with regard to the factual basis for the judge's decision. The record before the trial judge reveals that the conspiracy extended over nearly a three-week period, from February 24, 1980, until March 15, 1980. The State specifically referenced the duration of the conspiracy at the sentencing hearing.[14] The longer a conspiracy lasts, the longer an individual has to reconsider the outcome of the conspiracy. Thus, that individual has more of an opportunity to alter his or her illicit course of action. As the State notes in its brief, when a person continues "to travel down a long road toward murder without changing course,"[15] the failure to choose an alternate course of conduct implies a more egregious offense than those situations in which the crime is committed quickly without the opportunity for reflection.

▇ The record also clearly reveals that Furnish was killed as a result of the conspiracy. The reasons for considering death as an aggravating circumstance in a prosecution for conspiracy to commit murder are readily apparent given the inherent seriousness of the crime. Further, it is clear that the trial judge did in fact engage in the evaluative process which both our statutes and our Supreme Court require.[16] We will not remand solely for the trial judge to state for the record why duration of time and the resulting death are aggravating circumstances when those reasons are manifest. Either of them may properly serve to justify the trial court's decision to enhance Smith's presumptive conspiracy sentence by ten years.

▇ With regard to the consecutive sentence order, a trial court has wide discretion in determining whether imprisonment for multiple offenses should be served consecutively. *Pearson v. State* (1989) 1st Dist. Ind.App., 543 N.E.2d 1141, 1144. When a sentencing court exercises its discretion to order that sentences be served consecutively, the record must identify the relevant aggravating factor or factors which underlie such a decision. *Wethington, supra,* 560 N.E.2d at 510; *Richardson v. State* (1985) Ind., 481 N.E.2d 1310, 1314; *Shippen v. State* (1985) Ind., 477 N.E.2d 903; *Pyle v. State* (1985) Ind., 476 N.E.2d 124, 127; *Taylor v. State* (1982) Ind., 442 N.E.2d 1087, 1092. While it

---

**14.** The record also reveals that Smith had attempted to solicit others to enter into a conspiracy with her to kill Furnish before Keown agreed to commit the crime, and that once Keown agreed, he and Smith even discussed alternative methods by which they would kill Furnish, including beating him with a tire tool.

**15.** Brief of Appellee at 8.

**16.** After hearing testimony at the sentencing hearing and before pronouncing sentence, the trial judge stated as follows:

"The Court has to consider the risk that a person will commit another crime, the nature and circumstances of the crime committed, the prior criminal record, character and the condition of the defendant. All of those things are considered as well as any other factors which the Court feels are important in determining the sentence and I have done that." Trial Record at 1007.

is true that the trial judge did not specifically articulate why he imposed consecutive sentences, it is clear, given the context of the sentencing record, that he did so because of the aggravating circumstances he found to exist. In our view, a remand to the trial court would accomplish no purpose other than to have the judge so state. In any event, we stress that the better and preferable practice is for the trial court to state unequivocally what aggravating circumstance or circumstances justify an enhanced sentence and what aggravating circumstance or circumstances justify a consecutive sentence order. *See Wethington, supra,* 560 N.E.2d at 510; *Forrester v. State* (1982) Ind., 440 N.E.2d 475, 488–89. It may be noted in this regard that ordinarily a single aggravating circumstance should not be used to impose both an enhanced sentence and consecutive sentences. *Staton v. State* (1994) 2d Dist. Ind.App., 640 N.E.2d 741, *trans. denied.*

■ Here, it was properly within the trial judge's discretion to enhance Smith's conspiracy sentence by ten years because duration of the conspiracy is a valid aggravating factor. Likewise, it is within the trial judge's discretion to order the conspiracy sentence served consecutive to the murder sentence because the fact that a death occurred as a result of the conspiracy is a valid aggravating factor.

■ Finally, we cannot say that the sentence imposed here is manifestly unreasonable in light of the facts of record, especially given the seriousness of the crimes involved.

Having made such a determination, we conclude that Smith fails upon her claims that she was denied effective assistance of trial and appellate counsel because they failed to raise sentencing errors. Her trial and appellate counsel merely failed to present potential, but meritless assignments of error. Such action does not amount to ineffective assistance of counsel. *See, e.g., Robinson, supra,* 424 N.E.2d at 121.

## II. EFFECTIVENESS OF TRIAL COUNSEL

Smith asserts that her trial counsel was ineffective in failing to object to presentation of certain evidence. The State argues that Smith has waived her right to assert ineffectiveness of trial counsel because such argument was available to her on direct appeal. Smith again responds that ineffective appellate counsel precluded her from pursuing such an argument on direct appeal. We address the merits of Smith's ineffective trial counsel claims because, as discussed above, we would examine the potential validity of such claims as part of our review of appellate counsel's effectiveness.

■ The standard for judging the adequacy of counsel's performance is that of reasonably effective assistance. In order to prevail upon her claim, Smith first must prove by a preponderance of the evidence that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *See Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Wickliffe v. State* (1988) Ind., 523 N.E.2d 1385; *Lawrence v. State* (1984) Ind., 464 N.E.2d 1291; *see also Brown, supra,* 587 N.E.2d at 700. To show prejudice, Smith must convince us that her counsel's errors were so serious as to deprive her of a fair trial, one ensuring a reliable result. *See Strickland, supra,* 466 U.S. at 686–87, 104 S.Ct. at 2064–65; *Kirby, supra,* 550 N.E.2d at 1346.

■ We judge the effectiveness of both trial and appellate counsel by the above standard. *Mato v. State* (1985) Ind., 478 N.E.2d 57, 62; *Brown, supra* at 700. Our judicial scrutiny of counsel's performance is highly deferential and we will not exercise such scrutiny through distortions of hindsight. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. Isolated poor strategy, inexperience, or questionable tactics do not necessarily amount to ineffective counsel. *E.g., Duncan v. State* (1987) Ind., 514 N.E.2d 1252, 1253. We will not second-guess counsel's actions after learning that they may not have been appropriate or productive. *Pearson, supra* 543 N.E.2d at 1143. There is a strong presumption that counsel's assistance fell within prevailing professional norms, and an appellant must present strong and con-

vincing evidence to rebut that presumption. *Duncan, supra* at 1253; *Pearson, supra* at 1143.

## A. Smith's Prior Involvement in Alleged Rape

A jury convicted Smith of child neglect stemming from Furnish's alleged rape of her daughter, Dove Annette.[17] A post-conviction relief court later vacated Smith's child neglect conviction and dismissed the charges against her after Dove Annette renounced her rape allegations. At trial, the State presented evidence to the jury concerning details of Smith's prior neglect conviction. Two witnesses, Keown and Tommy Carroll (Carroll), testified that Furnish had raped Dove Annette, and that Smith was involved. Smith's trial counsel did not move in limine to have the evidence excluded, nor did she object at trial to presentation of this evidence. Later, the State called Dove Annette as a witness against Smith. During cross-examination of Dove Annette, Smith's counsel attacked Dove Annette's credibility by forcing her to admit that she had lied under oath at the prior rape trial.

As mentioned above, we will not second-guess counsel's trial strategy and tactics with the benefit of hindsight. *Duncan, supra,* 514 N.E.2d at 1253; *Pearson, supra,* 543 N.E.2d at 1143. Counsel may well have chosen not to challenge any mention of Dove Annette's allegation that Furnish had raped her or the circumstances surrounding it because she wanted to use Dove Annette's admitted lying in those proceedings to assail her credibility and to further explore Dove Annette's motivation for testifying against Smith in the instant case. Clearly, the inference trial counsel wanted the jury to draw was that if Dove Annette fabricated her story once in an effort to send Smith to jail, she may well have fabricated her testimony in the instant case to achieve the same result.

 We agree that it is reasonable to infer that counsel's silence was trial strategy, and we will not consider it deficient performance. Accordingly, Smith has failed to present the necessary strong and convincing evidence to rebut the presumption of competency. Furthermore, even if her counsel's performance was deficient, Smith has not shown that her defense was prejudiced under the second component of *Strickland, supra.* Specifically, Smith cannot show to a reasonable probability that, but for counsel's error, the result of her trial would have been different. *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068; *Kirby, supra,* 550 N.E.2d at 1346. The evidence against Smith was considerable. Two witnesses testified about Smith's direct participation in the conspiracy to murder Furnish, and in the eventual murder. Two other witnesses testified that on prior occasions, Smith had approached each of them about murdering Furnish. It is unlikely that the jury found Smith guilty of murder and conspiracy to commit murder because of references to her involvement in a rape which, by the accuser's own admission, never occurred.

## B. Testimony Regarding Previous Solicitations

At trial, David McGuire (McGuire) and Carroll, both of whom had lived in Smith's home, testified that Smith had, in the past, attempted to persuade them to agree with her to kill Furnish. McGuire testified that he overheard Smith planning to kill Furnish, and that Smith offered him $500 to commit the murder. In addition, Carroll testified that Smith asked him to participate in a scheme to kill Furnish by drugging him so that she could obtain insurance money. Trial counsel objected to the questioning of both McGuire and Carroll when the State attempted to elicit the evidence regarding Smith's prior solicitations. Both times, she objected on the grounds that such incidents occurred either before or after the time frame of the charged conspiracy, and thus fell outside its scope. Smith contends that this was an improper objection and that even if this evidence could have been admitted

---

17. In 1977 the State charged both Furnish and Smith for their involvement in an incident in which Dove Annette accused Furnish of raping her. The State also charged Smith with child neglect as a result of the rape allegations. A jury found Smith and Furnish not guilty of rape, but found Smith guilty of child neglect.

under an exception to the general rule prohibiting evidence of other crimes, wrongs, or acts, the potential for unfair prejudice far outweighed its probative value. Had trial counsel correctly objected, Smith concludes the trial court would have excluded such evidence.

[33, 34] To succeed in arguing that trial counsel was ineffective in failing to present a specific objection, Smith must show that if trial counsel had made the proper objection, the trial court would have had sustained it. *See, e.g., Grigsby v. State* (1987) Ind., 503 N.E.2d 394; *King v. State* (1992) 5th Dist. Ind.App., 598 N.E.2d 589, 593, *trans. denied.* The above evidence was admissible and relevant under Indiana common law at the time of trial to establish Smith's preconceived plan to kill Furnish. *E.g., Hardin v. State* (1993) Ind., 611 N.E.2d 123, 129 (trooper's testimony concerning an aborted singular transaction with X admissible to show common plan in cocaine dealings with Y).[18] Smith's prior attempts to solicit McGuire and Carroll were sufficiently related in character, time (within two to five months) and place to the agreement with Keown so as to tend to establish a preconceived plan by which Furnish's murder was committed. *Id.* Inherent in a trial court's decision to admit such evidence is the determination that the potential for unfair prejudice does not sufficiently outweigh its probative value to the jury in the crime charged. Because the evidence was admissible, any objection, even one based upon the general inadmissibility of other crimes, wrongs, or acts, would have been unsuccessful. Accordingly, trial counsel was not ineffective for failing to present a different or more specific objection.

### C. Testimony Regarding Smith's "Lifestyle"

■ The State elicited testimony that Smith allowed Dove Annette and her boyfriend, Carroll, to have sex in Smith's home and that Smith allowed a fifteen-year-old girl and her boyfriend, McGuire, to live together in her home. Smith argues that such evidence was "calculated to prejudice the jury" and to "undermine" her credibility, and not admissible to prove that she "acted in accordance with that character in the instant charge." Brief of Appellant at 19. We disagree.

■ Such evidence is relevant to the charged offenses because both witnesses, at different times, lived with Smith in her home. Both testified that they were approached by Smith to murder Furnish. The fact that each was living in Smith's home at the time she made her offers explains the relationship they had with Smith and places the solicitations in context. Nevertheless, even if trial counsel's performance was deficient upon this point, Smith has failed to show that the error mandates a reversal. We are not even remotely convinced that the jury found her guilty of murder and conspiracy to commit murder merely because she allowed her teenage daughter and perhaps one of her daughter's friends to have sexual relations in the residence.

We turn now to Smith's allegation that her appellate counsel was ineffective because he did not raise ineffective assistance of trial counsel upon direct appeal. In doing so, we again recognize that it is not ineffective assistance of appellate counsel to fail to present meritless assignments of error. Therefore, because Smith's ineffective assistance of trial counsel claims fail upon their merits, appellate counsel was not ineffective in not presenting them. *See, e.g., Robinson, supra,* 424 N.E.2d at 121.

### III. DOUBLE JEOPARDY

Smith argues that the multiple sentences which the trial court imposed for murder and

---

**18.** Indiana courts repeatedly recognized common law exceptions to other prior crimes, wrongs or acts evidence. *See, e.g., Chinn v. State* (1987) Ind., 511 N.E.2d 1000, *reh'g denied.* Rule 404(b) of the Indiana Rules of Evidence embodies the present rule:

"**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

for conspiracy to commit murder violate her state and federal constitutional rights to be free from double jeopardy. Upon direct appeal, Smith's appellate counsel fashioned essentially the same argument, contending that the trial court erred in sentencing her both for murder and for conspiracy to commit murder. In affirming her convictions, our Supreme Court stated:

> "[Smith] claims that the two convictions are derived from the same acts and thus should be merged. The law is clearly settled adversely to defendant's position. Each of the two offenses here required proof of an element which the other did not. In a similar case, we stated:
>
>> 'Appellant next contends that he should not have had separate consecutive sentences ordered for felony murder and conspiracy to commit armed robbery. A conspiracy involves an intelligent and deliberate agreement to commit an offense. [Citation omitted.] It was unnecessary for the State to prove such an agreement in proof of the felony murder here. It was also unnecessary for the State to prove a killing in order to prove its conspiracy charge. The charges are therefore not the same for sentencing purposes.'
>
> *Williams v. State,* (1981) Ind., 426 N.E.2d 662, 670. It was proper here for the court to give separate sentences for the conspiracy and the murder." *Smith, supra,* 455 N.E.2d at 354–55.

Smith's post-conviction relief petition and her present appeal both contend that under Indiana's prevailing double jeopardy analysis, the State violates double jeopardy when it relies upon the same facts to prove both accomplice liability for commission of the underlying crime as well as the overt act in furtherance of a conspiracy. *Buie v. State* (1994) Ind., 633 N.E.2d 250, *reh'g denied; Derado v. State* (1993) Ind., 622 N.E.2d 181, 184. She concludes that the State has done just that in this case. The State counters that such an argument is precluded by *res judicata* and, thus, not available to Smith because she raised that issue upon direct appeal and our Supreme Court disagreed with her position in affirming her convictions.[19]

Smith argues that *res judicata* does not bar her double jeopardy claim because Indiana's double jeopardy analysis as applied in *Derado* and in *Buie* qualifies as a "new rule" in that it produces a result "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane* (1989) 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, *reh'g denied* (emphasis in original); *Daniels v. State* (1990) Ind., 561 N.E.2d 487, 489. Specifically, Smith contends that recent precedent has adopted a so-called "same-conduct" test, one requiring more than a "same-elements"-type analysis, in which a reviewing court merely examines the statutes at issue to determine whether each has an element the other does not. Smith further maintains that fundamental due process compels retroactive application of the "new" double jeopardy rule in this case,[20] and that, under the "new" analy-

---

19. The post-conviction court agreed with the State. In denying Smith's post-conviction petition, the court stated as follows upon this issue:

> "The Court also concludes that the Supreme Court of Indiana considered the allegation that it was error to convict and sentence the petitioner for both conspiracy to commit murder and murder ... [Smith] seeks to circumvent *res judicata* by claiming that court decisions subsequent to her appeal suggest that a different ruling might ensue on her double jeopardy claim, if that claim were now being presented anew. This Court cannot presume to know whether the passage of time or the change of personnel on an appellate panel would bring about a different atmosphere or result if the petitioner's direct appeal were considered for the first time today. This Court knows only

that the Supreme Court of Indiana once considered the petitioner's claim that her convictions and sentences for both conspiracy to commit murder and murder were contrary to law, and said court held that convictions and sentences for both were proper. The doctrine of *res judicata* dictates that this Court is bound by said determination, and that this Court not consider the issue further." Post–Conviction Record at 96–97.

20. In *Daniels, supra,* 561 N.E.2d at 490, our Supreme Court cited *Teague, supra,* 489 U.S. at 313, 109 S.Ct. at 1077, for the proposition that courts shall apply a newly-interpreted or devised rule retroactively if that rule requires observance of procedures that are " 'implicit in the concept of ordered liberty,' " and " 'without which the likelihood of an accurate conviction is seriously

sis, she "could not be convicted of the Murder charge as it amounts to a lesser included offense of the Conspiracy charge." Brief of Appellant at 30.

It is clear to us that our Supreme Court has decided this issue adversely to Smith upon direct appeal. We also agree that our Supreme Court upon direct appeal could have chosen to engage in a more complete double jeopardy review, one akin to the approach it announced in *Tawney v. State* (1982) Ind., 439 N.E.2d 582, 588, the progenitor of the so-called "same-conduct" analysis it recently applied in *Buie, supra,* and in *Derado, supra.* Nevertheless, we need not immerse ourselves in an analysis to determine whether Smith may avoid *res judicata* under "new-rule" and "retroactive application" theories because even under the *Derado* and *Buie* analysis, Smith's double jeopardy claim fails.

■ Smith correctly contends that *Derado* and *Buie* require an examination of the manner in which the State actually charged the offenses, not just an evaluation of the statutory provisions alone. Indeed, if a reviewing court engaged only in a "same-elements" double jeopardy analysis,[21] "[a] comparison of Indiana's murder statute with its conspiracy statute shows why, on their face, the two offenses are not the same under [a "same-elements" analysis]." *Buie, supra,* 633 N.E.2d at 260. The offense of murder requires proof that the accused either knowingly or intentionally killed a human being, while the offense of conspiracy to commit murder requires proof of an agreement to commit murder plus proof of an overt act or acts in furtherance of that agreement. *Buie, supra* at 260. Thus, murder requires proof of a killing, but not of an agreement. *Id.; Chinn v. State* (1987) Ind., 511 N.E.2d 1000, 1003. On the other hand, conspiracy to commit murder requires proof of an agreement, but not necessarily of a killing. *Buie, supra* at 260; *see also Smith v. State* (1984) Ind., 465 N.E.2d 1105, 1124.

■ As our Supreme Court made clear in *Buie,* although murder and conspiracy to commit murder are not the same offense, "double jeopardy analysis does not end with an evaluation of the statutory provisions alone." 633 N.E.2d at 260. We also must examine the manner in which the State actually charged the offenses. *Id.; Derado, supra,* 622 N.E.2d at 183. "If from the manner in which the offenses were actually charged it appears that one offense becomes a 'species of lesser-included offense,' then double jeopardy principles bar conviction for both offenses." *Buie, supra* at 260.

■ Having so stated, we must disagree with Smith's conclusion that convictions for murder and conspiracy to commit murder, as charged by the State here, violate double jeopardy principles enumerated in both the United States and the Indiana constitutions. In *Buie, supra,* 633 N.E.2d 250, our Supreme Court recognized that where the overt act element of a conspiracy is the underlying offense charged in a separate count, convictions and sentences for both would constitute multiple punishments for the same offense, which both the federal and Indiana constitutions forbid.[22]

diminished.' " *See also Brown, supra,* 587 N.E.2d at 698.

21. A "same-elements"-type double jeopardy analysis derives from *Blockburger v. U.S.* (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. Our Supreme Court employed such an analysis in *Elmore v. State* (1978) 269 Ind. 532, 382 N.E.2d 893.

22. In *Buie,* an individual named McCord told defendant Buie that he wanted a woman killed and that he would pay $4000 to have it done. Later, McCord and Buie met, along with another individual named Sheets. McCord gave Buie a shotgun, after which Buie and Sheets drove together to the victim's trailer. Buie entered the victim's trailer and shot her twice. Buie and Sheets returned to McCord's house, where McCord took the gun and paid Buie part of the money owed for the killing. The State charged Buie with murder and also with conspiracy to commit murder. The conspiracy information charged the intentional killing of the victim as the overt act in furtherance of the agreement to kill the victim. For that reason, the court recognized that convictions for both murder and conspiracy to commit murder based upon the facts involved would violate double jeopardy. Applying that rationale to the case before it, the *Buie* court concluded that when the overt act element of a conspiracy charge is the separate underlying offense, and when the State has obtained a conviction for conspiracy based upon the commission of the underlying offense as the overt act,

The other case upon which Smith relies is *Derado, supra,* 622 N.E.2d 181. The facts in *Derado* are very similar to the case before us. In *Derado,* the State charged defendant Derado with dealing in cocaine and conspiracy to deal in cocaine.[23] The dealing charge specifically alleged that Derado and an individual named Barnett knowingly delivered cocaine to undercover FBI agents on five separate occasions. The conspiracy charge alleged that Derado and Barnett, from June 24, 1988, up to and until June 14, 1989, agreed to deliver cocaine with the requisite intent to commit the crime. The arrangement alleged was that Derado would deliver cocaine to Barnett, and that Barnett would, in turn, deliver or sell it to various individual buyers. The State chose to charge each of the five separate instances in which Barnett physically delivered cocaine to undercover government agents as *the* overt act in furtherance of the agreement.

After engaging in a "same-conduct" analysis, the *Derado* court determined that convictions for the underlying felony and conspiracy to commit that felony are barred by double jeopardy when the State is required to prove no facts to obtain a conviction for the underlying felony in addition to those it must prove to obtain a conspiracy conviction. Accordingly, and following the same rationale it would later recite in *Buie,* the court reversed Derado's conspiracy conviction because, as the State charged the crimes, it did not have to prove any facts to obtain a conviction for dealing cocaine in addition to those it had to prove to obtain a conviction for conspiracy to deal. 622 N.E.2d at 184.

In the case before us, the information charging Smith with murder, alleges as follows:

"WILLIAM E. KEOWN and CAROL JEAN SMITH, on or about the 15th day of March, A.D., 1980, at and in the County of Marion, and the State of Indiana, Did [sic] knowingly and intentionally kill one JAMES F. FURNISH, a human being, by shooting at and against the body of the JAMES F. FURNISH, with a rifle, loaded with gunpowder and metal bullets, inflicting a mortal wound upon the body of the said JAMES F. FURNISH, as the result of which wound the said JAMES F. FURNISH did then and there and thereby die. CAROL JEAN SMITH aided and abetted the said WILLIAM E. KEOWN in the commission of said felony, MURDER, by providing U.S. Currency to WILLIAM E. KEOWN for the purpose of purchasing a rifle with which to kill the said JAMES F. FURNISH[.]" Record at 5-1.

The information alleging conspiracy reads that Smith and Keown agreed as follows:

"to knowingly and intentionally kill one JAMES F. FURNISH, a human being, by shooting at and against the body of the said JAMES F. FURNISH, with a rifle, loaded with gun powder and metal bullets, which agreement resulted in the death of the said JAMES F. FURNISH, on 3/15/80. In furtherance of said conspiracy, CAROL JEAN SMITH provided U.S. Currency to WILLIAM E. KEOWN, for the purpose of purchasing a rifle, with which to kill JAMES F. FURNISH...., all of which overt acts resulted in WILLIAM E. KEOWN intentionally killing . the said JAMES F. FURNISH, on 3/15/80. [sic] all of which is contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana." Record at 5.

The information charging conspiracy does indeed note that Smith's and Keown's agreement resulted in Furnish's death. It further reads that Keown killed Furnish as a result of Smith's overt act of providing the money to Keown to purchase the rifle. Regardless, the language so stating is surplusage. As

---

the State may not subsequently pursue a prosecution for the underlying offense. 633 N.E.2d at 261.

**23.** The statute under which Derado was charged and convicted of dealing in cocaine states as follows: "A person who ... knowingly or intentionally manufactures or delivers cocaine ... commits dealing in cocaine ..., a class B felony. However, the offense is a class A felony if the amount of the drug involved weighs three [3] grams or more, or if the person delivered the drug to a person under eighteen [18] years of age at least three [3] years his junior." I.C. 35–48–4–1(a) (Burns Code Ed.Supp.1980). The State charged Derado with a class A felony.

discussed earlier, the State need not have proved that Keown killed Furnish to convict Smith of a conspiracy to kill Furnish, a fact that is critical in distinguishing the case at bar from *Derado*.

In proving the agreement in *Derado*, the State had to show that Derado agreed to deliver the cocaine to Barnett and that Barnett, in turn, agreed to deliver the cocaine to individual buyers. In proving the overt act in furtherance of the agreement as charged, the State had to show that Barnett in fact delivered cocaine pursuant to the arrangement or agreement with Derado to an undercover agent on the charged occasions. Thus, by proving the facts necessary to gain a conviction for conspiracy, a trier of fact necessarily concludes that Derado delivered to Barnett the cocaine Barnett in turn sold to the undercover agents. Those were the very facts which the State had to prove to convict Derado for dealing.

In this case, however, unlike *Derado*, the State, as it charged the two crimes, could not prove all of the elements of the underlying murder by proving its case for conspiracy to commit murder. The critical distinction between this case and *Derado* is the fact that the State here did not charge Keown's act in "carrying out the arrangement", i.e., his knowing and intentional killing of Furnish, as the overt act in furtherance of the agreement to kill Furnish. The State needed only to show that Smith and Keown agreed to kill Furnish by shooting him with a rifle and that, as the overt act in furtherance of the agreement, Smith provided Keown the money to buy the rifle. The trier of fact could reasonably conclude or infer based upon those facts that the rifle was to be the instrument used to carry out the plan, and therefore could convict her of conspiracy to commit murder. The trier of fact, given only evidence of an agreement and Smith's provision of money, could in no way conclude or infer that the "goal" of the conspiracy, i.e., the killing, had been accomplished. To con-

vict her of murder, the State had to show not only that Smith provided money for Keown to purchase a rifle (the act that ties her to the murder), but that Keown in fact murdered Furnish. Accordingly and contrary to the situation presented in *Derado* as it charged the two crimes, the State was required to prove a fact to obtain the conviction against Smith for murder in addition to those facts it was required to prove to obtain the conviction against her for conspiracy. *See Derado, supra*, 622 N.E.2d at 184.

This is, therefore, not a case in which the charging documents rely upon the *exact* "same facts to prove both accomplice liability for the commission of the underlying crime as well as the overt act committed in furtherance of the conspiracy." 622 N.E.2d at 184.[24] Further, we point out that our decision here comports with our Supreme Court's recognition that the holding in *Derado* "does not necessarily affect the body of case law ... which makes it clear that a defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony." *Id. E.g., inter alia, Witte v. State* (1990) Ind., 550 N.E.2d 68, 71; *Whittle v. State* (1989) Ind., 542 N.E.2d 981, 991; *Chinn, supra*, 511 N.E.2d at 1008.

Based upon our above discussion, we conclude that Smith's sentences for murder and for conspiracy to commit murder did not violate the double jeopardy protections of the U.S. and the Indiana constitutions. Therefore, her claim fails even when we apply her so-called "new" double jeopardy analysis. The trial court did not err in convicting and sentencing Smith for murder and conspiracy to commit murder, and the post-conviction court did not err in refusing to grant the relief Smith sought upon double jeopardy grounds.

As before, Smith further claims that her appellate counsel was ineffective because he failed to present "correctly" such double jeopardy arguments. Smith's claims fail

---

24. We note here that had the State in *Derado* charged as the overt act in furtherance of the agreement to deal cocaine, Derado's delivery of cocaine to Barnett for the purpose of Barnett, in turn delivering it to the undercover agents who posed as buyers, the two cases would produce the same result. Instead, the State chose to charge the "goal" of the conspiracy, namely Barnett's delivery of that cocaine to undercover officers—the very act which completed the proof of the underlying dealing offense.

even if her appellate counsel had raised the very argument Smith contends he should have raised. Thus, her appellate counsel was not ineffective in failing to raise a meritless argument. *See, e.g., Robinson, supra,* 424 N.E.2d at 121.

## CONCLUSION

We discern no reason for the post-conviction court to have granted Smith relief. The judgment of the trial court is affirmed.

FRIEDLANDER and KIRSCH, JJ., concur.