Gary Edward BECKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9704–CR–142.

Court of Appeals of Indiana.

May 18, 1998.

Kurt A. Young, Nashville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Gary Edward Becker, ("Becker"), appeals his convictions, after a trial by jury, of the following crimes: 1) Rape, a class B felony; 2) Criminal Deviate Conduct, a class B felony; 3) two counts of Attempted Criminal Deviate Conduct, class B felonies; 4) Criminal Confinement, a class D felony; 5) Escape, a class C felony; and 6) Battery, a class A misdemeanor.[1] Becker received enhanced, consecutive sentences totaling ninety-two (92) years. We affirm Becker's convictions, but remand for resentencing.

### Issues

I. Whether the trial court committed reversible error by overruling Becker's objection to the introduction at trial of the videotaped deposition of a State's witness.

II. Whether the trial court erred by sustaining the State's objection to the introduction of evidence that the victim had been charged with check deception.

III. Whether the trial court erred by imposing consecutive sentences in excess of its authority under IND.CODE § 35–50–1–2.

The State raises the following sentencing error:

IV. Whether the trial court erred by not ordering the sentences Becker received for the present convictions to run consecutively to any sentence he might receive as the result of the revocation of his probation.

### Facts

The evidence most favorable to the verdict reveals that, on February 6, 1995, Becker abducted, beat, and committed several sex crimes against the victim while threatening to kill her. This conduct ultimately resulted in the convictions for the sex crimes and the

---

1. IND.CODE § 35–42–4–1 (Rape); IND.CODE § 35–42–4–2 (Criminal Deviate Conduct); IND.CODE § 35–41–5–1 (Attempt); IND.CODE § 35–42–3–3 (Criminal Confinement); IND.CODE § 35–44–3–5 (Escape); IND.CODE § 35–42–2–1 (Battery).

Criminal Confinement offense outlined above. The victim identified Becker as the assailant at a one-on-one show-up identification the night of the attack, and again at trial. DNA evidence linked Becker to the victim. Semen collected from the victim matched a blood sample drawn from Becker with an approximate frequency of occurrence of 1 in 2.8 billion in the Caucasian population. Becker is Caucasian.

Becker was apprehended by police the same night as the attack. After being arrested and handcuffed, Becker spit on a police officer and ran approximately thirty feet away from the police before being subdued. This conduct resulted in Becker's Escape and Battery convictions.

Soon after the assault, the victim was taken to the Emergency Department of a hospital where nurses and a physician treated her and completed a sex crimes kit including the taking of samples of genetic material for testing. The physician who treated the victim planned to move to North Carolina before trial and had no plans of returning to Indiana. The trial court permitted the State, over Becker's objection, to take the physician's videotaped deposition for use at trial in lieu of his live testimony. Becker and his attorney were present during the deposition and the physician was subject to cross-examination. The physician's videotaped deposition, which ran for 56 minutes, was admitted at trial over Becker's objection. The written transcript of the deposition was also admitted over Becker's objection. In his deposition, the physician testified that the victim was "obviously upset and very anxious of the things that had happened. She was able to provide a very—very good history, a very good—a detailed history of what had happened that evening, ... one of the most graphic, explicit, and detailed histories, more so than what I'm used to hearing from the patient." The history taken by the physician corroborated the victim's testimony at trial in great detail. Moreover, the physician related that: "[t]he patient stated that she had been hit several times in the face and she had also been—had tumbled onto the asphalt, which either one of those could have caused the things I was seeing on the face,

the bruising and the abrasions, ...." The physician testified further that the victim's black eye and abrasions "were of an acute nature, meaning that they ... were very, very recent." The physician related that the notes taken by the nurse indicated that the victim's assailant was "a man with blond hair and scars on his face, 25 to 28 years-old." The physician testified that he gave the victim prescription pain medicines for the pain experienced in her face and eye. The physician's testimony also provided support for the chain of custody foundation for the admission of the DNA identification evidence.

The State presented the testimony of the nurse who assisted the physician in collecting the DNA samples from the victim. The nurse who testified was responsible for following the protocol and sealing the sex crime kit for the police. The State also presented the testimony of the Crime Scene Technician from the Marion County Crime Laboratory who collected the victim's sealed rape kit from the locked evidence box at the hospital and delivered it to the crime lab for DNA testing. In addition to the physician's deposition testimony, other witnesses testified regarding the victim's description of her assailant. Also, the State presented photographs purporting to demonstrate the victim's injuries from the alleged beating.

The trial court granted the State's motion in limine prohibiting Becker from introducing evidence that the victim had been charged with check deception. The case against the victim had been dismissed after she paid the checks. Becker wished to cross-examine the victim regarding whether the State had dismissed the check deception charge in exchange for her testimony against Becker. The State represented that no deals had been made to secure the victim's testimony.

Becker was on probation from an earlier Rape conviction at the time he committed the present offenses. A petition to revoke Becker's probation was pending based on the outcome of the present prosecution. The trial court ordered the sentences on Becker's convictions to run consecutively resulting in an aggregate sentence of ninety-two (92) years. In support of its consecutive sentencing order, the trial court found:

Okay, the fact that Mr. Becker is married and has two children may well be a mitigating factor, and that he assisted in their support. He obviously was not with his wife and two children according to his own version if he was at the Oxford Inn smoking crack. .... Mr. Becker's prior record obviously is an aggravating circumstance.... The fact that he was on probation at the time.... Mr. Becker is a dangerous individual and he so proved. This court is charged with a duty of ... protection of society.... Mr. Becker will live through these sentences and he'll be back in society, but Mr. Becker most likely will not be in a position to terrorize and brutalize [his former victims].

## Discussion and Decision

### I. Deposition Testimony Admitted at Trial—Unavailable Witness

Becker argues the trial court erred by overruling his objection to the admission of the videotaped deposition of the Emergency Department physician because the State failed to demonstrate the unavailability of the witness. We disagree.

### Standard of Review

■ Whether to allow the use of previously-recorded testimony in a particular case is left to the discretion of the trial court. *State v. Owings,* 622 N.E.2d 948, 952 (Ind. 1993). We will reverse only for an abuse of that discretion. *Id.; Johnston v. State,* 517 N.E.2d 397, 399 (Ind.1988).

### Admission of Prior Testimony

The Indiana Rules of Evidence preclude the admission of hearsay except as provided by law or rule. Ind. Evidence Rule 802. However, depositions taken in compliance with the law are not excluded by the hearsay rule if the declarant is unavailable as a witness and the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Evid.R. 804(b)(1). When the declarant is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other

reasonable means, the witness is deemed to be unavailable. Evid.R. 804(a)(5).

The Indiana Rules of Trial Procedure apply to all criminal proceedings. Ind.Crim. Rule 21. Consequently, depositions may be used by any party for any purpose if the court finds that the witness is outside the state, unless, it appears that the absence of the witness was procured by the party offering the deposition. Ind.Trial Rule 32(A)(3).

■ The right of confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution provide the foundation for the rules set forth above. Thus, to satisfy Constitutional muster, admission of previously recorded testimony in lieu of live testimony must pass a two-prong test. First, the prosecution must produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). Secondly, the court must determine that the statement bears sufficient indicia of reliability. *Id.; Freeman v. State,* 541 N.E.2d 533 (Ind.1989). The second prong of the test is usually met where the defendant had an opportunity to cross-examine the witness. *Freeman,* 541 N.E.2d at 537.

■ In the present case, Doctor Scott, the emergency room physician, was listed on the State's witness list. The State gave notice and scheduled the Doctor's deposition to preserve his testimony for trial due to his impending move to Charlotte, North Carolina. The deposition was conducted and videotaped in Marion Superior Courtroom 3. Dr. Scott testified that he was moving from Indiana to North Carolina. He further stated that, with no family in Indiana, he had no plans to return once his move was complete. Additionally, the record reveals that Becker and his attorney were present at the deposition and conducted extensive cross-examination of the witness.

■ A finding of unavailability can be implicit in the trial court's admission of the deposition and the burden is on the appellant to prove that the court's decision was clearly

against the logic and the natural inferences to be drawn from the record. *Iseton v. State*, 472 N.E.2d 643, 649 (Ind.Ct.App.1984). Additionally, the law does not require a futile or unnecessary act. *Johnston v. State*, 517 N.E.2d 397, 399 (Ind.1988). Consequently, while the Confrontation Clause may under different circumstances[2] require the prosecutor to seek the issuance of a subpoena to establish unavailability, we cannot say, in light of the facts of this case, that the Court's finding of unavailability was clearly against the logic and the natural inferences to be drawn from the record. The appellant has failed in his burden to convince us otherwise. Accordingly, we find no error.

## II. Check Deception Charge

Becker argues the trial court erred in prohibiting him from cross-examining the victim regarding the charge of check deception that had been pending against her at the time of the alleged attack. Becker contends that the evidence would have been relevant and probative to show whether the victim had been offered a favorable disposition of the charge in exchange for her testimony against Becker, thus, undermining her credibility.

■ A trial court's decision regarding the admission of evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Minnick v. State*, 544 N.E.2d 471, 477 (Ind.1989). For the purpose of attacking a witness' credibility, evidence that the witness has been *convicted* of a certain class of crimes shall be admissible. Evid.R. 609. However, a witness may not be impeached with evidence of crimes for which charges are pending but which have not been reduced to convictions. *Chambers v. State*, 271 Ind. 357, 392 N.E.2d 1156, 1159–60 (1979).

■ In the present case, the check deception charge had not been reduced to a conviction. Moreover, Becker has not asserted

that he was precluded from cross-examining the victim regarding whether she had received any compensation for her testimony. Therefore, the trial court did not abuse its discretion in excluding the check deception evidence.

## III. & IV. Sentencing

### Standard of Review

■ Appellate courts are duty bound to correct sentences which violate the trial court's statutory authority to issue consecutive sentences under IND.CODE § 35–50–1–2. *Sinn v. State*, 609 N.E.2d 434, 436 (Ind.Ct. App.1993), *trans. denied.* In 1994, our general assembly amended IND.CODE § 35–50–1–2 to impose limitation upon a trial court's discretion to impose consecutive sentences. *Tedlock v. State*, 656 N.E.2d 273 (Ind.Ct.App. 1995). The relevant portions of the 1994 version of the statute effective in the present case read as follows:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, *except for* murder and *felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury,* the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IND.CODE 35–50–2–8 [habitual offender statute] and IND.CODE 35–50–2–10 [habitual substance offender statute], to which the defendant is sentenced for felony convictions arising out of *an episode* of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

IND.CODE § 35–50–1–2(a) (1994) (Emphasis added); P.L. 164–1994.[3] Indiana Code Section 35–41–1–25 provides as follows:

> 'Serious bodily injury' means bodily injury that creates a substantial risk of death or

---

**2.** *See, e.g., Bartruff v. State*, 528 N.E.2d 110 (Ind. Ct.App.1988), *trans. denied.*

**3.** In 1995, the general assembly amended IND. CODE § 35–50–1–2(a) (1994), set out above, to replace the exception for felonies resulting in

serious bodily injury with "crimes of violence." P.L. 304–1995 § 1; IND.CODE § 35–50–1–2(c) (1995). The 1995 statute contains a list of felonies qualifying as "crimes of violence" which includes Rape and Criminal Deviate Conduct. IND.CODE § 35–50–1–2(a) (1995). The 1995 ver-

that causes serious permanent disfigurement, unconsciousness, *extreme pain,* or permanent or protracted loss or impairment of the function of a bodily member or organ.

(Emphasis added).

▮ When the trial court exercises its discretionary authority to impose enhanced and/or consecutive sentences, the trial court must enter, on the record, a statement which 1) identifies all of the significant mitigating and aggravating circumstances; 2) states the specific reason why each circumstance is considered to be mitigating or aggravating; and 3) shows that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. *Smith v. State,* 655 N.E.2d 532, 540 (Ind.Ct.App. 1995), *trans. denied.* However, when the record indicates that the trial court engaged in the evaluative processes but simply did not sufficiently articulate the reasons for the sentence imposed, then the reasons underlying the sentencing statement requirement have been fulfilled and there is no need for the reviewing court to remand for a more specific sentencing statement. *Id.* at 541. Nevertheless, it is very important for the sentencing court to state unequivocally what circumstances justify the sentence in order that the reviewing court can determine the reasonableness (or as in the case at bar, the legality) of the sentence imposed. *Id.* at 540 n. 13, 542.

Becker argues that his crimes consisted of a single episode of criminal conduct which did not result in serious bodily injury to any victim, and therefore, the total of the consecutive terms could not exceed the presumptive sentence for the felony which is one class higher than the most serious felony for which he has been convicted. *See Jennings v. State,* 687 N.E.2d 621, 623 (Ind.Ct.App.1997). Becker's most serious felonies were class B felonies. The presumptive sentence for a class A felony at the time of Becker's sentencing was twenty-five (25) years. IND. CODE § 35–50–2–4; *Jennings,* 687 N.E.2d at 623. Thus, Becker contends that twenty-five

years is the maximum, aggregate term for which he could be sentenced.

▮ In determining whether the trial court had authority to impose consecutive sentences for crimes arising out of a single episode of criminal conduct under IND.CODE § 35–50–1–2(a) (1994), the reviewing court must determine whether any of the convictions for which defendant received consecutive sentences constitute convictions for which the defendant 1) received an enhanced penalty because the felony resulted in serious bodily injury and; if so, 2) that the defendant knowingly or intentionally caused the serious bodily injury. *Greer v. State,* 684 N.E.2d 1140, 1142 (Ind.1997). In *Greer,* it was manifest from the record that 1) defendant's sentences had been enhanced, 2) the prosecution had been required to prove that the defendant knowingly or intentionally caused serious bodily injury, and 3) the victims had suffered serious bodily injury as each had been shot repeatedly but had "miraculously survived." *Id.* at 1141–42. The only question the *Greer* court had left to decide was whether the sentences had been enhanced *because* the felonies resulted in serious bodily injury. *Id.* at 1142. The *Greer* court answered the question in the affirmative, noting that although the sentencing court's statement that one of the aggravating circumstances had been 'the seriousness of the totality of these crimes' had not been explicit on this point, there was little doubt that, given the circumstances of the crimes, the trial court had been referring to the serious bodily injuries inflicted upon the victims. *Id.*

▮ In the present case, the trial court's sentencing statement, set out in the FACTS section, listed the following factors justifying the sentence: 1) Becker's prior Rape conviction, 2) that he was on probation at the time of the offense, and 3) that society needed to be protected from Becker. (R. 1085–86). Although Becker received enhanced sentences for his convictions, the sentencing statement does not specify 1) that the victim suffered serious bodily injury, 2) that Becker intended to cause serious bodily injury, or 3) that the sentences were enhanced because of the serious bodily injury. Moreover, we are unable to conclude, as did the *Greer* court,

sion of the statute applies to crimes committed after June 30, 1995. P.L. 304–1995 § 2.

that these required factors have been clearly established under the particular circumstances of the case. Although, as asserted by the State, the victim may have suffered serious bodily injury (extreme pain) as the result of the beating inflicted in conjunction with the sex crimes, the record does not establish that fact as a matter of law. Nor does the sentencing statement reference the victim's injuries or the circumstances of the crime. Finally, Becker's convictions at the class B felony level did not require the State to prove serious bodily injury. *See Greer*, 684 N.E.2d at 1143 n. 8 (conviction of criminal deviate conduct at class A felony level required proof of serious bodily injury).

Accordingly, we must reverse and remand with instructions that the trial court enter a more specific sentencing statement in accordance with the requirements of IND. CODE § 35–50–1–2(a) (1994), and, if necessary, enter a modified sentence. In crafting the new sentencing statement and/or the new sentence, the trial court may take into consideration the fact that Becker's conduct after his arrest, which resulted in the Escape and Battery convictions, constituted a separate episode of criminal conduct from the crimes committed earlier against the victim. *See Newman v. State*, 690 N.E.2d 735, 737 (Ind.Ct.App.1998) (escape after apprehension was a separate criminal episode from the crime for which the defendant had been arrested). Also, the State is correct that IND. CODE § 35–50–1–2(b) mandates that the trial court order the sentences imposed on the present offenses to run consecutively to any sentence Becker might receive as the result of his probation revocation. *See LeMaster v. State*, 498 N.E.2d 1185, 1186 (Ind.1986); *Scott v. State*, 632 N.E.2d 761, 768 (Ind.Ct. App.1994); *Jones v. State*, 536 N.E.2d 1051, 1052 (Ind.Ct.App.1989), *cert. denied*, —— U.S. ——, 117 S.Ct. 238, 136 L.Ed.2d 168.

Convictions affirmed; remanded for resentencing.

SHARPNACK, C.J., and DARDEN, J., concur.