**Howard O. HOLLEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 13A01–0001–CR–6.

·Court of Appeals of Indiana.

Dec. 15, 2000.

Transfer Granted Feb. 14, 2001.

William E. Daily, Danville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Howard O. Hollen ("Hollen") appeals his convictions of Battery of a Law Enforcement Officer, a class D felony, and Operating a Vehicle While Intoxicated, a class A misdemeanor.

### Issues

Hollen raises three issues, restated as:

I. Whether the trial court should have granted Hollen's motion for mistrial after the arresting officer testified, in violation of the court's pre-trial order *in limine*, that he had been dispatched to Hollen's residence to investigate a complaint that Hollen had been threatening his neighbors;

II. Whether the trial court improperly admitted the arresting officer's Affidavit for Probable Cause, which contained the officer's handwritten notes indicating that Hollen engaged in another fight with the officer after Hollen's arrest; and

III. Whether the trial court failed to properly consider and balance aggravating and mitigating factors when sentencing Hollen.

### Facts and Procedural History

On August 29, 1998, Hollen drove to the Crawford County home of his neighbor, Joyce Jellison ("Jellison") to use Jellison's

telephone. Hollen parked his truck in the middle of the road adjacent to Jellison's home. As Hollen exited the vehicle, Jellison noticed that Hollen had a gun in his left pocket, and that a gun fell from the truck seat.[1] Jellison noted that Hollen smelled of alcohol and slurred his words. Hollen called the phone company on Jellison's telephone and cursed and threatened to kill the phone company representative.[2] He then advised Jellison that he was going to kill everyone on the right-hand side of the street, because "they was all out to get him." (R. 543.) Jellison called the Crawford County Sheriff's Department to report Hollen's threats. Hollen got back in his truck, spun his wheels in the gravel roadway, and drove toward his house.

Deputy Herman Polen ("Deputy Polen") was dispatched to Hollen's home, also in Crawford County. After Deputy Polen arrived, he observed Hollen driving toward the residence very slowly and on the wrong side of the road. Hollen stopped his vehicle and got out, and began cursing and shouting at the deputy. Deputy Polen smelled alcohol on Hollen's breath, and asked Hollen to accompany him to the Sheriff's department for a breathalyzer test. As Deputy Polen was reaching for Hollen's arm to escort him to the nearby police car, Hollen struck Deputy Polen in the jaw. He then violently grabbed the deputy's testicles, refusing to let go until Deputy Polen struck Hollen several times and choked him.

After subduing Hollen, Deputy Polen took him to the Sheriff's Department, where a breathalyzer measured Hollen's blood alcohol content to be .15%. Deputy Polen then took Hollen to a hospital outside of Crawford County for treatment of injuries Hollen sustained in the altercation. While in the hospital, Hollen struck Deputy Polen four more times before being strapped to a bed.

Hollen was charged with Battery of a Law Enforcement Officer and Operating a Vehicle While Intoxicated. This case proceeded to jury trial in the Crawford County Circuit Court on November 1, 1999. The jury convicted Hollen, and the court entered judgment on those convictions on November 3, 1999. Hollen was sentenced on December 1, 1999. He now appeals.

### Discussion

#### I. Mistrial

##### A. Issue

After the jury was selected, Hollen made a motion *in limine*, asking the court to forbid Deputy Polen from submitting "any testimony about somebody, neighbor waving a gun or something, anything in that nature...." (R. 479.) The judge ruled that the State could not present evi-

---

1. .It is unclear from the record whether Jellison meant that Hollen had one or two guns. Hollen conceded that he arrived at Jellison's residence with a handgun, but claimed that the firearm remained in his vehicle in a holster.

2. Hollen explained his conversation with the phone company representative by claiming that "they," apparently the phone company, were "coming out the road out there," and that "[t]he people that was out there messing around and what and then things you know and they was coming out the road. And they pulled in my driveway and I said I don't care if they (inaudible), them deer is plenty of them out there, but there wasn't turkey's you know. [sic]" (R. 608–609.) This statement, and others offered by Hollen during pre-trial conferences and at trial, raises questions about Hollen's state of mind and his ability to fully

comprehend the nature of these proceedings. Hollen initially advised the State that he intended to assert a defense of insanity. (R. 50.) The State, however, objected to Hollen's assertion of this defense as untimely pursuant to Indiana Code section 35–36–2–1. (R. 55.) The court does not appear to have ruled on the timeliness of Hollen's assertion of his insanity defense, and Hollen apparently did not pursue the matter. Hollen later underwent a psychological examination and was found to be fit to stand trial. Hollen presents no argument upon appeal regarding the insanity defense issue or his competency to be tried. His only argument with regard to his competency is his claim that the trial court erroneously failed to find that his state of mind was a significant mitigating factor, as discussed below.

dence regarding the specific reason Deputy Polen was dispatched to Hollen's house unless that information came from a 911 call log, duly established as a business record by an appropriate witness pursuant to Evidence Rule 803. (R. 484.) Rather, the court indicated that Deputy Polen was only to say that he went to Hollen's residence in response to a 911 call. (R. 487.)

During trial, the following exchange between the prosecutor and Deputy Polen took place:

[Prosecutor]: Did he, had you said anything to him to ellicit [sic] the cursing from [Hollen]?

Polen: No, we were just standing there and you know, I wouldn't want to use the words he was using, just telling me to get off his property. I had no business being there and I told Mr. Hollen, yes I have a reason for being there. I said you have been threatening your neighborhood with a handgun.

(R. 500.) Hollen promptly objected and asked for a mistrial. The court declined to grant a mistrial, but admonished the jury to disregard Deputy Polen's testimony.

## B. Standard of Review

■ The decision to grant or deny a motion for mistrial is entrusted to the sound discretion of the trial court, because the judge is in the best position to evaluate the circumstances of an allegedly prejudicial event, and to assess its impact on the jury. *Kavanaugh v. State*, 695 N.E.2d 629, 632 (Ind.Ct.App.1998). When reviewing a trial court's grant or denial of a mistrial, we look to whether the moving party was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is a function of the probable persuasive effect of the statement or conduct, and not of the degree of the conduct's impropriety. *Id.* A mistrial is an extreme remedy warranted only when no other curative measure, such as an admonishment, will rectify the situation. *See Herrera v. State*, 710

N.E.2d 931, 937 (Ind.Ct.App.1999). Reversal is seldom required when the trial court has admonished the jury to disregard some statement or conduct. *Kavanaugh*, 695 N.E.2d at 632.

## C. Discussion and Decision

■ Hollen recognizes that the trial court's ruling on his motion *in limine* did not determine the ultimate admissibility of this evidence. *See Herrera*, 710 N.E.2d at 936. Rather, a motion *in limine* is designed to prevent the disclosure of potentially prejudicial matters to the jury until the trial court has the opportunity to rule on its admissibility. *Id.* at 935. If the trial court errs by admitting evidence that the defendant sought to be excluded by a motion *in limine*, the error is in the admission of evidence, not in the violation of the court's pre-trial order. *Id.* at 936. Hollen argues that Deputy Polen's testimony warranted a mistrial because it constituted inadmissible evidence of prior misconduct under Evidence Rule 404(b), and inadmissible hearsay. The State does not address the admissibility of Deputy Polen's testimony in its Brief, and we will assume for purposes of this discussion that the testimony was not admissible.

■ Error in the admission of evidence may be harmless when a conviction is otherwise supported by independent evidence. *Mauricio v. State*, 652 N.E.2d 869, 872 (Ind.Ct.App.1995). Here, Hollen's convictions for Battery of Deputy Polen, and for Operating While Intoxicated, were supported by considerable evidence. Indeed, Hollen does not dispute that the evidence was sufficient to sustain his convictions. Evidentiary errors may also be harmless when the evidence in question is merely cumulative of evidence admitted elsewhere. *Cohen v. State*, 714 N.E.2d 1168, 1175 (Ind.Ct.App.1999), *trans. denied.* The substance of Deputy Polen's objectionable testimony regarding Hollen's earlier threatening behavior was repeated, without objection, by Jellison, who testified

that Hollen threatened to kill his neighbors.[3]

Hollen nevertheless maintains that Deputy Polen's injection of the statement regarding Hollen's threats was not harmless. Hollen's defense at trial was that Deputy Polen struck him first, and that he only struck the deputy to defend himself.[4] Hollen claims that Deputy Polen's inadmissible testimony was not harmless because it prejudiced him in the eyes of the jury and undermined his claim of self-defense, subjecting him to peril remediable only by a mistrial.

■ After denying Hollen's motion for mistrial, however, the trial court admonished the jury to disregard Deputy Polen's remarks. A timely and accurate admonishment is presumed to cure any error in the admission of evidence. *Heavrin v. State*, 675 N.E.2d 1075, 1084 (Ind. 1996). Hollen contends that the court's admonishment was ineffective because the court did not admonish the jury to disregard Jellison's subsequent testimony about Hollen's threats to kill his neighbors and his possession of a gun. Hollen, however, neither objected to Jellison's testimony nor asked the court to admonish the jury to disregard her remarks. Trial counsel's failure to object to testimony generally waives any error regarding its admission, *see Davis v. State*, 598 N.E.2d 1041, 1048 (Ind.1992), and it is too late now for Hollen to complain about the admission of Jellison's testimony.

Hollen's argument regarding the court's failure to admonish the jury after Jellison's testimony simply does not relate to the effectiveness of the court's admonishment to disregard Deputy Polen's testimony. Rather, Hollen's claim that Jellison's testimony somehow diluted the impact of the court's admonishment mainly serves to bolster the State's position that Deputy Polen's violation of the court's pre-trial order *in limine* was harmless because the substance of his testimony was repeated without objection by Jellison. Even if Deputy Polen's injection of his inadmissible testimony in violation of the court's order was not harmless, the trial court properly admonished the jury to disregard Deputy Polen's testimony, and we must presume that the jury complied with the court's instruction. The court, having admonished the jury, did not abuse its discretion by declining to declare a mistrial.

## II. Admission of Affidavit of Probable Cause

### A. Issue

During trial, the State moved to introduce the Affidavit for Probable Cause prepared by Deputy Polen following Hollen's arrest. The Affidavit alleged that Hollen committed Battery against Deputy Polen in Crawford County, Indiana. [R. 517.] The Affidavit also contained Deputy Polen's handwritten notes, which stated,

---

3. During oral argument, Hollen contended that since Jellison did not testify that Hollen specifically threatened to kill his neighbors *with a gun*, Jellison's testimony was not sufficiently cumulative of Deputy Polen's to render admission of the deputy's testimony harmless. We see little difference between a statement that Hollen threatened his neighbors with a gun, and a statement that Hollen threatened to kill his neighbors while in possession of a gun located in his nearby parked car.

4. During oral argument, Hollen cited our recent case, *Shoultz v. State*, 735 N.E.2d 818 (Ind.Ct.App.2000), for the proposition that a citizen has the right to use reasonable force to resist arrest when a police officer uses unconstitutionally excessive force to effect the arrest. Our holding in *Shoultz* is not applicable here. First, *Shoultz* involved a conviction for resisting arrest, not Battery. Moreover, in *Shoultz*, the defendant fought with the arresting officer using reasonable and proportionate force after the officer used unconstitutionally excessive force by clubbing the defendant to stop him from shouting obscenities during the officer's investigation of another individual. Even if Deputy Polen had struck Hollen first, and if this was unconstitutionally excessive force, Hollen responded by grabbing and tearing the deputy's scrotum, hardly reasonable or proportional. Thus, Hollen would not have been entitled to so resist Deputy Polen's arrest.

"Also note please, at Hospital, he fist fighted me again, we had to strap him down to a bed to protect the staff. He was not harmed[.]" (R. 517.) Hollen objected to the admission of the Affidavit on the ground that evidence regarding Hollen's second fight with Deputy Polen was irrelevant to Hollen's Battery charge, and that even if it was relevant, its prejudicial effect outweighed its probative value. The trial court overruled Hollen's objection.

### B. Standard of Review

The evidentiary rulings of a trial court are afforded significant deference upon appeal, and will be reversed only if the court has abused its discretion resulting in the denial of a fair trial. *Herrera,* 710 N.E.2d at 935. Although relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 402, 403; *Robinson v. State,* 720 N.E.2d 1269, 1271 (Ind. Ct.App.1999). The trial court's discretion regarding the admission of evidence extends to the weighing of probative value against possible prejudice, and the court's conclusions in this regard will be reviewed only for an abuse of discretion. *Herrera,* 710 N.E.2d at 935.

### C. Discussion and Decision

Hollen argues that the trial court abused its discretion by admitting the Affidavit. Specifically, Hollen claims that Deputy Polen's notes were completely irrelevant because his Battery charge related only to the altercation that occurred at his residence, and argues that the notes prejudiced him because they referred to inadmissible evidence of other misconduct. During oral argument, Hollen presented an additional contention that evidence of the subsequent fight was inadmissible because the hospital where the fight occurred was located outside of Crawford County.

The State contends that Hollen's Battery charge was broad enough to encompass the second altercation at the hospital. The Information charging Hollen with Battery of a Law Enforcement Officer states that:

> On August 29, 1998, in Crawford County in the State of Indiana . . .

> Howard O. Hollen did knowingly or intentionally touch Deputy Herman E. Polen, a law enforcement officer, engaged in the execution of his official duties, in a rude, insolent or angry manner, to-wit: hit him in the face and grabbed his testicles, resulting in bodily injury, to-wit: a torn scrotum.

(R. 12.) The State is correct that the information in this case does not specify that Hollen's charges were limited to the first altercation at his residence. However, the information clearly states that Hollen's Battery occurred in Crawford County. During oral argument, the State conceded that the hospital in which the second altercation between Hollen and Deputy Polen occurred was located outside of Crawford County.

Criminal actions are generally to be tried in the county where the offense was committed. IND.CODE § 35–32–2–1(a). The prosecution of a crime is instituted when the prosecuting attorney files an information or indictment in a court with jurisdiction over the charged crime. IND. CODE § 35–34–1–1(b). A charging information must set forth, among other things, "the nature and elements of the offense charged in plain and concise language without unnecessary repetition," IND.CODE § 35–34–1–2(a)(4), and must state "the place of the offense with sufficient particularity to show that the offense was committed within the jurisdiction of the court where the charge is to be filed." IND.CODE § 35–34–1–2(a)(7). In this case, Hollen was specifically charged with battering Deputy Polen in Crawford County. Evidence of Hollen's second altercation with the deputy, which occurred outside Crawford County, was therefore irrelevant to the issue of Hollen's guilt of the crime with which he was charged, and should not have been admitted.

Nevertheless, we conclude that admission of the Affidavit was harmless. As noted above, the erroneous admission of evidence is generally harmless if the evidence in question is merely cumulative of evidence admitted elsewhere. Deputy Polen testified, in response to questions from Hollen's counsel, and without any objection, about Hollen's second attack at the hospital. (R. 533.) Although this testimony was equally inadmissible, Hollen did not object to it at trial, and may not complain about its admission here. Further, as discussed above in connection with the admission of Deputy Polen's testimony regarding Hollen's threats, the erroneous admission of evidence may be harmless when a conviction is otherwise supported by independent evidence. Again, Hollen's convictions for Battery of Deputy Polen, and for Operating While Intoxicated, were supported by sufficient evidence, a point Hollen does not dispute.

### III. Sentencing

### A. Issue

Hollen's conviction of Battery as a class D felony carried a presumptive one and one-half year sentence, which could have been enhanced by up to another one and one-half years upon a finding of aggravating circumstances, *see* IND.CODE § 35–50–2–7(a), and his conviction of Operating a Motor Vehicle While Intoxicated as a class A misdemeanor carried a maximum sentence of one year. *See* IND.CODE § 35–50–3–2. The trial court found the following aggravating factors:

A. The probability that Defendant will commit another crime;

B. The Defendant's lack of remorse;

C. That Defendant is unlikely to respond to probation.

(R. 354.) The only mitigator found by the court was:

A. That Defendant has a lack of substantial criminal history.

(R. 354.) The court then sentenced Hollen to 24 months for Battery, and one year for Operating a Vehicle While Intoxicated, to run concurrently. Hollen claims that the trial court improperly considered and weighed the aggravating and mitigating circumstances when it enhanced the sentence for his Battery conviction by six months.

### B. Standard of Review

Determining the appropriate sentence is within the trial court's discretion, and the trial court will only be reversed if it has abused that discretion. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind. 2000). The trial court has the discretion to increase or decrease a presumptive sentence upon finding aggravating or mitigating circumstances. *Id.* The weighing of those factors is soundly within the court's discretion. *Id.*

When the court imposes a sentence other than the presumptive sentence, we examine the record to determine whether the trial court sufficiently explained its reasons for selecting the sentence it imposed. *Kile v. State*, 729 N.E.2d 211, 213 (Ind.Ct.App.2000). The trial court must identify all significant aggravating and mitigating circumstances, explain why each circumstance is aggravating or mitigating, and weigh mitigating circumstances against the aggravating factors. *Utley v. State*, 699 N.E.2d 723, 730 (Ind.Ct.App.1998). When the record, however, indicates that the trial court engaged in the evaluative processes but simply did not sufficiently articulate the reasons for the sentence imposed, then the reasons underlying the sentencing statement requirement have been fulfilled and there is no need for the reviewing court to remand for a more specific sentencing statement. *Becker v. State*, 695 N.E.2d 968, 974 (Ind. Ct.App.1998).

While a sentencing court must consider all evidence of mitigating circumstances presented by a defendant, the finding of mitigating circumstances rests within the sound discretion of the court.

*Bacher,* 722 N.E.2d at 803. The court cannot ignore mitigating factors that are clearly supported by the record. *Widener v. State,* 659 N.E.2d 529, 534 (Ind.1995). The failure to find a mitigating circumstance clearly supported by the record may imply that the circumstance in question was overlooked. *Id.* However, the trial court need not consider, and we will not remand for reconsideration of, alleged mitigating factors that are highly disputable in nature, weight, or significance. *Wilkins v. State,* 500 N.E.2d 747, 749 (Ind. 1986). Moreover, a sentencing court need not agree with the defendant as to the weight or value to be given to proffered mitigating facts. *Bacher,* 722 N.E.2d at 803. Indeed, a sentencing court is under no obligation to find mitigating factors at all, *Echols v. State,* 722 N.E.2d 805, 808 (Ind.2000), and does not need to explain why it has chosen not to find a mitigating circumstance. *Bacher,* 722 N.E.2d at 803.

### C. Discussion and Decision

#### 1. Aggravating Factors

##### a. Likelihood of Future Crimes

Hollen first argues that the court failed to adequately explain why Hollen was likely to commit another crime and why the factor was aggravating. The court stated, "[t]he risk that the Defendant will commit another crime. That is something that the Court is concerned about. However, as looking at Mr. Howard's [sic] record, it has been up to this point relatively clean." (R. 703.) The court later stated, "Mr. Hollen, I do not know if you will commit another crime or not. W[e] can't look and for[e]see the future, but we do have before the court a serious situation." (R. 704). According to Hollen, these statements were insufficient and require remand.

The record contains evidence supporting the court's conclusion that Hollen was at risk to commit another crime. Hollen committed the offenses for which he was convicted while under the influence of alcohol. Hollen submitted evidence during his sentencing hearing indicating that he suffered from mental instability related to alcohol abuse, and invited the court to conclude that his precarious state of mind was a circumstance mitigating against the imposition of the presumptive sentence. Hollen, however, specifically advised the trial court that he would not consider abstaining from alcohol as a condition of probation. Given Hollen's admitted history of alcohol abuse, the relationship between Hollen's drinking and the crimes committed herein, and Hollen's refusal to stop drinking, the court was entitled to find that Hollen might commit other offenses in the future. Although the trial court could have explained in greater detail its reasons for concluding that Hollen was at risk to commit other crimes, we are convinced from the evidence and from the trial court's statements that the court sufficiently considered and weighed this aggravating factor.

##### b. Lack of Remorse

Next, Hollen claims that the trial court misconstrued his good faith assertion of innocence for lack of remorse, and improperly found this to be an aggravating factor. A trial court may, under proper circumstances, consider lack of remorse as an aggravating factor. *Smith v. State,* 655 N.E.2d 532, 539 (Ind.Ct.App. 1995). A defendant lacks remorse for his crimes when he displays disdain or recalcitrance, the equivalent of saying 'I don't care.' *Id.* A defendant does not, however, lack remorse by simply maintaining his innocence, even after conviction. *Id.* A defendant has the right to dispute his guilt throughout the criminal process, including sentencing. *Bluck v. State,* 716 N.E.2d 507, 512 (Ind.Ct.App.1999). A court may not enhance a sentence for lack of remorse based on a defendant's good-faith assertion of innocence. *Id.* Hollen claims that he did not lack remorse, but simply asserted his innocence, and reasons that the court impermissibly penalized him for disputing his guilt.

The State, however, generally argues that there was enough independent corroboration of Hollen's guilt that his assertion of his innocence in the face of that evidence was not in good faith and amounted to a lack of remorse. Our supreme court has specifically noted that "[a] lack of remorse by a defendant who insists upon his innocence" may be regarded as an aggravator. *Bacher*, 686 N.E.2d at 801. We have suggested that a defendant's assertion of innocence may support a finding of lack of remorse if there is sufficient independent evidence of guilt. *See Bluck*, 716 N.E.2d at 513 (holding that the use of the defendant's assertion of innocence to show lack of remorse was inappropriate when the evidence of guilt consisted solely of a victim's testimony and was not corroborated by physical evidence); *Dockery v. State*, 504 N.E.2d 291, 297 (Ind.Ct.App.1987) (indicating that lack of remorse by a defendant who claims innocence may be a valid aggravator unless the only evidence of guilt was a victim's uncorroborated testimony).

Here, Deputy Polen's brother-in-law, who accompanied the deputy to Hollen's residence for unknown reasons, observed Hollen attack Deputy Polen and generally corroborated Deputy Polen's testimony. Hollen contended that he fought with Deputy Polen only to defend himself after the deputy struck him without provocation. The jury chose to believe Deputy Polen and his brother-in-law, and rejected Hollen's defense. However, the rejection of a defense by the finder of fact based upon corroborating evidence of guilt does not necessarily mean that the defense was asserted in bad faith. Otherwise, a defendant would be subjected to an enhanced penalty whenever he maintained his innocence and lost. There is no indication in the record that Hollen's assertion of his innocence under these circumstances was in bad faith or amounted to disdain or recalcitrance. The trial court accordingly erred by enhancing Hollen's sentence on that basis.

### 2. Mitigating Factor—Hollen's Mental Condition

During the sentencing hearing, Hollen introduced certain records from St. Joseph's Hospital in Huntingburg, Indiana, where Hollen was taken for evaluation following his arrest. The State did not object to the admission of these records. Rather, the State invited the court to consider the records in their entirety, (R. 695) and the court stated that the records would be incorporated into Hollen's presentence investigation report. (R. 678.) These records indicate that at the time of the crimes, Hollen was experiencing "extreme paranoia," and was "operating under the belief that the police had been spying on him, that the telephone company was somehow tapping his line, and officials were monitoring his behavior through the use of satellites." (R. 118.) Hollen told hospital personnel that sheriff's deputies had been living around his house for several weeks as part of a scheme to "get rid of" him, move into his house, take his belongings, and sell them. (R. 129.) Hollen was diagnosed with alcohol-induced psychotic disorder, among other things. (R. 118.)

A defendant's diminished mental capacity at the time of a crime may be a valid mitigating circumstance, and a trial court's failure to consider clear evidence of a defendant's diminished capacity and find it to be a mitigating factor may be erroneous. *See Young v. State*, 696 N.E.2d 386, 391–392 (Ind.1998) (finding the defendant's enhanced sentence manifestly unreasonable because the trial court failed to find that the defendant's mental retardation was a significant mitigating factor); *Mayberry v. State*, 670 N.E.2d 1262, 1270 (Ind. 1996) (revising the defendant's sentence because the trial court declined to find the defendant's mental illness mitigating, when the defendant was found to be mentally ill when she committed her crime). According to Hollen, his medical records clearly showed that he suffered from diminished mental capacity at the time of his crimes.

Hollen argues that the trial court failed to consider this evidence, and should have found his mental state to be a significant mitigating factor.

The record indicates that the trial court considered Hollen's medical records, and Hollen's state of mind, when the court identified aggravating and mitigating circumstances. As noted above, the state invited the court to consider Hollen's records, and the court specifically stated that the records would be made part of the presentence report. The court addressed Hollen's mental state during the sentencing hearing, stating

> The court will allow you, Mr. Hollen, I don't know what the VA H[o]spital or another treatment facility for alcoholism or maybe behavioral problems, if you petition the Court and the Court is satisfied that the program such as the VA hospital or any other facility would serve to assist you and it is a facility where you would be secure at, the court wo[u]ld entertain a motion by your attorney or you to have some of your sentence served at that facility. I do believe that you do need some help with your mental health and with any alcohol problem you may have.

(R. 706.)

The court clearly considered Hollen's state of mind during sentencing. The court, however, as noted above, was under no obligation to find this factor mitigating, and did not have to explain why it chose not to reduce Hollen's sentence on this basis. Since the record shows that the trial court . considered Hollen's mental health during sentencing, we cannot say that the court erred by failing to find this to be a mitigating factor.

### 3. Balancing of Factors

 The parties agree that Hollen's expected failure to respond to probation was a valid aggravating circumstance,[5] and agree that Hollen's clean criminal record was a valid mitigating circumstance. We have found that the probability Hollen would commit another crime was properly aggravating, while Hollen's lack of remorse was not. Thus, two of the three aggravating factors found by the court remain. Hollen's position is that each of the aggravators identified by the court must have had some independent aggravating value, and that if any are removed, his enhanced sentence must necessarily reflect their absence. Hollen accordingly maintains that if any of the aggravators identified by the court are found to be invalid, this matter must be remanded for another sentencing hearing to provide the trial court the opportunity to determine the value of the remaining aggravators. The State, on the other hand, refers us to the general rule that a single aggravator may support the full enhancement of a sentence, see Bacher, 686 N.E.2d at 803, and asks us to affirm the enhancement of Hollen's sentence on the basis of the remaining aggravators.

We do not question the validity of the rule upon which the State relies. Properly understood, the rule stands for the proposition that a trial court may impose a fully enhanced sentence upon an adequate showing of a single aggravating factor. The rule allows a trial court to focus on the factor or factors that truly warrant an enhanced sentence, without fear that a reviewing court will reverse the court's sentence for lack of sufficient aggravation. The rule should not, however, encourage trial courts imposing enhanced sentences to simply compile a list of virtually every potentially aggravating factor, secure in the belief that even if some of the aggravators identified are later found to be invalid, a higher court will separate the wheat from the chaff and still uphold an enhanced sentence on the basis of the general rule that a single aggravator may support an enhanced sentence.

---

5. During the sentencing hearing, Hollen repeatedly testified that he would not quit drinking as a condition to any parole or probation arrangement. Hollen accordingly concedes that he would probably not respond well to probation.

We reiterate that it is the trial court's job to identify valid aggravating and mitigating factors, explain why they qualify as such, weigh those factors, and articulate its reasons for imposing its sentence. When, as here, a trial court identifies a number of aggravating factors and explains that they support an enhanced sentence, we must assume that the court considered each factor to have some aggravating value. Unless the trial court either assigns a specific weight to each aggravator in terms of the proportion of an enhancement, or says that any one of the aggravators identified could individually support the enhancement, we are left to guess at the respective weight assigned to each factor. Without such guidance from the trial court, it is difficult, if not logically impossible, to affirm an enhanced sentence in its totality while at the same time invalidating a certain proportion of the factors specifically identified by the trial court as supporting that very enhanced sentence. Our options in such a case would be to remand the matter to the trial court for a new sentencing hearing, *see Miller v. State*, 709 N.E.2d 48, 50 (Ind.Ct.App.1999) (remanding for re-sentencing because we could not determine weight trial court assigned to invalid aggravators), or to revise the sentence when appropriate pursuant to our authority under Article 7, section 6 of the Indiana Constitution and Appellate Rule 17.

■ In this case, we are satisfied that neither option is necessary. When the reviewing court is sufficiently persuaded that the original sentencing decision would have been the same had the trial court not relied on an impermissible factor, the sentence should be affirmed. *Angleton v. State*, 686 N.E.2d 803, 815 (Ind.1997). Here, only one of the three aggravating factors identified by the trial court, Hollen's alleged lack of remorse, was invalid. As Hollen recognizes, this factor, if valid, would at best be a modest aggravator. *See Bacher*, 686 N.E.2d at 801. The removal of this factor is therefore not particularly significant. Further, we have not added any mitigating factors. Moreover, the trial court enhanced Hollen's sentence only modestly. The court could have, on the basis of the remaining factors, enhanced Hollen's sentence for Battery by an additional one and one-half years, and could have run both of Hollen's sentences consecutively. The court, however, only enhanced the Battery sentence by six additional months, and ran Hollen's sentences concurrently. Thus, given the relative insignificance of the loss of one of three aggravators, the absence of new mitigators, and the minimal enhancement at issue, we are sufficiently persuaded that the trial court's sentencing decision would have been the same had the court not identified Hollen's lack of remorse as an aggravator. We therefore affirm Hollen's sentence.

## Conclusion

We conclude that although Deputy Polen injected evidence that the parties concede was inadmissible when he violated the court's pre-trial order *in limine* by testifying about Hollen's threats, the trial court did not abuse its discretion by refusing to declare a mistrial because admission of this evidence was harmless, and any possible prejudice was cured by the court's timely admonishment. We similarly conclude that while admission of Deputy Polen's handwritten notes on his Affidavit of Probable Cause was error, it was harmless since the evidence was merely cumulative of Deputy Polen's subsequent testimony, and because there was sufficient independent evidence supporting Hollen's convictions. Finally, while the trial court erred in finding Hollen's lack of remorse to be an aggravating factor, the exclusion of this factor did not affect the court's sentencing decision.

Judgment affirmed.

BAKER, J., concurs.

MATTINGLY, J., concurs with separate opinion.

MATTINGLY, Judge, concurring with opinion

I fully concur with the majority that Hollen was not prejudiced by the Deputy's testimony about Hollen's threats or by the admission of cumulative evidence in the form of the Deputy's handwritten notes. However, I write separately to address the majority's suggestion that a trial court considering a sentence enhancement based on aggravating circumstances is obliged to assign "a specific weight to each aggravator in terms of the proportion of an enhancement." Such an obligation is, I believe, inconsistent with our well-established standard of review of sentencing decisions and with the rule that a single aggravator may support an enhanced sentence even if other aggravators are determined to be invalid.

We are routinely involved in the review of sentences, but our standard of review remains highly deferential. While sentencing decisions are not "per se unreachable on appeal," the trial court "is afforded the broadest of discretion in making the sentencing decision within the confines of the statutory limitations." *Johnson v. State*, 455 N.E.2d 897, 902 (Ind.1983). Appellate courts have the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, but will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B); *Noojin v. State*, 730 N.E.2d 672, 679 (Ind.2000). The standard is "not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Id., quoting Prowell v. State*, 687 N.E.2d 563, 568 (Ind.1997).

The majority's suggestion that the trial court is obliged to assign to each aggravating factor a specific proportional weight seems to me inconsistent with this broad discretion and inappropriate in light of the inherent complexity of the weighing process. An appellate court will not revise an enhanced sentence where the trial court has found aggravating circumstances, the sentence is authorized by statute, and the sentence is not manifestly unreasonable: "We are not bound to conduct a *de novo* review of the sentencing hearing and assess or reweigh the trial court's findings and conclusions regarding aggravating and mitigating circumstances." *Bish v. State*, 421 N.E.2d 608, 620 (Ind.1981).

Assigning a proportional weight to each aggravating circumstance could serve only to encourage such inappropriate appellate reweighing and reassessment of the trial court's sentencing decision, and to encourage appeals premised on the trial court's improper assignment of, or failure to assign, proportional weight to the aggravating factors. In light of the *Bish* holding and the breadth of the trial court's discretion in sentencing decisions I believe we cannot and should not require the trial court to articulate the proportion by which each aggravating circumstance supported a sentence enhancement.