Carl ECHOLS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9801–CR–36.

Supreme Court of Indiana.

Jan. 21, 2000.

Walter E. Bravard, Jr.. Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kimberly MacDonald, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted Carl Echols of murder, attempted murder, and two counts of resisting law enforcement. He received the maximum sentence for each of these convictions, to be served consecutively. He was also found to be a habitual offender and received an additional thirty years on the murder count, for a total sentence of 149 years. On appeal, Echols presents three issues for review: (1) whether the evidence was sufficient to support his convictions for murder, attempted murder, and two counts of resisting law enforcement, (2) whether the trial court properly instructed the jury on specific intent, and (3) whether the trial court erred in sentencing him to consecutive and maximum terms for each conviction, thereby rendering his sentence manifestly unreasonable. We affirm the trial court.

### Factual Background

In the early evening of July 28, 1997, Echols, his nephew Toma Echols, and Larry Baugh were at Toma's mother's house drinking alcohol and smoking marijuana. Toma asked Baugh if he wanted to go with Echols and Toma to visit Toma's aunt and "some chic" in Brokenburr Trails Apartments. Baugh agreed. Echols drove, Toma sat in the front passenger seat, and Baugh rode in the back. On the way, Baugh observed a shotgun propped up against the front seat beside Toma. As they neared the complex, Toma told Baugh to look for a specific street address, and Echols slowed down and turned the headlights off. Shortly, Toma said, "[T]here they go, Carl," and fired a number of shots into a crowd using a rifle that had been stowed between Toma's seat and the door. Echols then fired the shotgun into the air.[1] The car sped away, but police were nearby and soon pursued. The car proceeded at a high speed through two stop signs before crashing into the side of another car and coming to a stop. Echols, Toma, and Baugh attempted to flee through the back passenger side door, which was the only door still operational, but soon surrendered to the police.

Damon Lemon, who had been sitting outside one of the apartments, died from a gunshot wound to the head. Janice Bob-

---

1. One eyewitness located Echols in the back seat of the car with the shotgun, while Baugh testified that Echols drove and fired the shotgun from the front seat. The recitation of facts in Echols' brief is consistent with the latter version. Echols' version is also consistent with police testimony that Toma and Echols had to climb into the back seat to exit the vehicle.

bitt, who had been walking along the sidewalk at the apartments, was shot in the thigh. An eyewitness testified that he "knew [the men in the car] was about to do something crazy .... [c]ause they was coming to [sic] slow." The police recovered a lead fragment and numerous spent shell casings, all of which were subsequently linked to the rifle that Toma had fired. The police also recovered a shotgun shell near where Echols was standing when he was arrested.

## I. Sufficiency of the Evidence

■ Echols contends that the evidence was insufficient to convict him of murder, attempted murder, and two counts of resisting law enforcement. This Court will affirm the convictions if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Garrett v. State*, 714 N.E.2d 618, 621 (Ind. 1999). We do not reweigh the evidence or assess the credibility of the witnesses, *id.*, and we consider only the evidence that supports the verdict, *Harrison v. State*, 707 N.E.2d 767, 788 (Ind.1999).

■ The jury was instructed on accomplice liability,[2] and the evidence is sufficient to uphold the verdicts for murder and attempted murder on that basis. A defendant's mere presence at the crime scene is insufficient to establish accomplice liability. *See Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981). By itself, a defendant's lack of opposition to the crime is also insufficient to establish accomplice liability. *See id.* Nonetheless, both of these factors may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime. *See id.*

2. *See* Ind.Code § 35-41-2-4 (1998).

3. Throughout his brief, Echols argues that, because there is no way a jury could conclude that he had the intent to kill, he has been wrongly convicted of murder and attempted

■ A jury could have reasonably inferred from Echols' conduct either that Echols and Toma had planned to shoot at the residents of Brokenburr Apartments together, or that Echols had agreed to, and eventually did, drive Toma to the complex for the purpose of firing the fatal shots. Either scenario supports the jury's verdicts on the murder and attempted murder counts.

■ Echols also argues that there was insufficient evidence to convict him for two counts of resisting law enforcement. Because Echols both led the police on a chase, and also attempted to flee from the car once it had come to a stop, there was sufficient evidence from which the jury could have concluded that Echols was guilty beyond a reasonable doubt of two counts of resisting law enforcement.

## II. Jury Instructions

■ Echols argues that the trial court committed fundamental error when it failed to "instruct the jury that he must have specifically intended to kill the victims named in the Information in order to be convicted of Murder and Attempted Murder."[3] Echols did not object to the court's instructions at trial. Thus, he has waived the claim of error and it is unavailable on appeal unless it rises to the level of fundamental error. *Garrett v. State*, 714 N.E.2d 618, 622 (Ind.1999).

■ Echols correctly recites the law regarding the necessity of a jury instruction on specific intent in an attempted murder case. In certain circumstances, a trial court commits fundamental error when it neglects to inform the jury that it must find that the defendant had a specific intent to kill in order to support a conviction for attempted murder. *See, e.g., Taylor v. State*, 616 N.E.2d 748, 749 (Ind.1993). The

murder. Echols has overlooked Indiana Code § 35-41-2-4: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...."

trial court did instruct the jury on specific intent for attempted murder: "The defendant must have had the specific intent to commit murder in order to be found guilty of attempt murder." There is no comparable requirement for the murder charge. *See Garrett*, 714 N.E.2d at 622 (either a "knowing" or "intentional" killing is sufficient for a murder conviction). Accordingly, the trial court correctly instructed the jury and there was no error, fundamental or otherwise.

### III. The Sentence

Echols argues that the trial court erred in imposing the maximum sentences for each offense, and for ordering him to serve these sentences consecutively. He also contends that his 149–year sentence is manifestly unreasonable.

#### A. *Sentencing*

 It is well established that sentencing decisions lie within the discretion of the trial court, *see Harris v. State*, 659 N.E.2d 522, 527–28 (Ind.1995), including the decision to enhance a presumptive sentence or to impose consecutive sentences, *see McCollum v. State*, 582 N.E.2d 804, 817 (Ind.1991). Indiana Code § 35–38–1–7.1 sets forth aggravating and mitigating circumstances a trial court may consider in deciding whether to deviate from a presumptive sentence or to impose consecutive sentences.

Echols raises a number of procedural challenges to the trial court's sentencing, including failure to state separate reasons for the sentence enhancement and the imposition of consecutive sentences, failure to mention the "need [for] correctional treatment,"[4] and failure to find any mitigating circumstances. As for the latter two, Indiana Code § 35–38–1–7.1(a) does not require a trial court to address a defendant's need for correctional treatment, nor is a trial court required to find mitigating circumstances where there are none, *see Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995).

 Echols is correct that a trial court is required to state its reasons for imposing consecutive sentences or enhanced terms. However, here the trial court committed no error. The trial court found no mitigating circumstances, and then listed three aggravating factors: (1) Echols' lengthy criminal history,[5] (2) Echols' unsuccessful attempts at rehabilitation, and (3) the fact that the crime consisted of a random shooting into a crowd of people. These are valid factors to consider, and the trial court did not abuse its discretion in imposing the maximum sentences for murder and attempted murder based on these factors.

 After imposing the maximum sentences for murder and attempted murder, the court then stated: "[F]or the same aggravating factors that the Court has already recited and weighed in this matter, the Court makes the decision to run these sentences consecutively." A trial court may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. *See Taylor v. State*, 710 N.E.2d 921, 925 (Ind.1999). The trial court committed no procedural error in identifying and weighing the mitigating and aggravating factors.

#### B. *Manifestly Unreasonable Sentence*

Echols also contends that his sentence is manifestly unreasonable. Although this Court has the constitutional authority to revise and review sentences, *see* Ind. Const. art. VII, § 4, it will do so only

---

**4.** Two pages later, Echols states: "As one of [the] statutory aggravating circumstances, the trial court found that Carl Echols was in need of correctional and rehabilitative treatment...." We do not address the argument attached to this section because the trial court did not make this finding, as Echols points out here.

**5.** Echols' prior criminal convictions included, among other things, robbery at gunpoint, robbery at knife point, and forgery.

when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). This Court's review under Rule 17(B) is very deferential to the trial court: "[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (quoting *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997)).

The same facts on which the trial court based its imposition of maximum and consecutive sentences also support the finding that Echols' sentence is not "manifestly unreasonable in light of the nature of the offense and the character of the offender."

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs as to part I and dissents as to parts II and III.