# FOR PUBLICATION



**FILED**
Dec 19 2013, 7:02 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRITTNEY WATSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1303-CR-91 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff, | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Roland W. Chamblee, Jr., Judge
Cause No. 71D08-1012-MR-9

**December 19, 2013**

**OPINION – FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Brittney Watson ("Watson") appeals her conviction for Murder, a felony, presenting the sole issue of whether sufficient evidence supports the conviction. We affirm.[1]

**Facts and Procedural History**

During the evening of November 29, 2010, Watson, Cornelius Miller ("Miller"), and several other individuals were involved in a confrontation in a parking lot in South Bend. Watson called Miller a "rapist" because of his alleged internet posting of nude photos of Watson's friend. (Tr. 327.) Miller responded by punching Watson in the face several times. Miller's girlfriend, Ashley Shaw ("Shaw"), then engaged in a fistfight with Watson for "about five minutes." (Tr. 329.) Shaw and Miller got into Shaw's vehicle to leave, but Watson attempted to jump on top of the moving vehicle. Shaw drove her vehicle into Watson.

Witnesses heard Watson make threats, including: "somebody is going to die" and "I'm going to have my brothers and them come down here and kill your b---- a--. I'm going to have them shoot your f-----g house up." (Tr. 62, 78.) Upon leaving, Watson telephoned the father of her child, Steven Rice ("Steven"), and Steven's brother, Stephon Rice ("Stephon"), to report that she had been beaten.

Approximately two hours later, Steven and Stephon appeared at the home where Watson was staying. Both were armed. Stephon was accompanied by his mother's boyfriend, Rene Vasquez ("Vasquez") and Steven was accompanied by his cousin,

---

[1] We held oral argument in this case on December 2, 2013, at New Palestine High School in New Palestine, Indiana. We wish to thank our host and commend counsel for their able advocacy.

2

Brandon Rogers ("Rogers"). The brothers, Watson, and Rogers discussed "going to fight" Miller. (Tr. 279.) Stephon expressed his intention to kill Miller.

At some point, Stephon observed a parked vehicle and approached it. Apparently believing that Watson's assailant was inside, Stephon confronted the passengers, saying: "I'm going to kill everybody. Somebody is going to die tonight." (Tr. 302.) Watson stopped him, protesting that he had targeted the wrong man.

Watson left in a vehicle with Steven and Rogers; Stephon and Vasquez followed. Watson directed the men to the residence shared by Miller and Shaw. At the apartment, she urged the brothers, "You all better do what we came here to do." (Tr. 303.) Although she expressed an interest in going inside to "fight a girl who was in the house," Watson ultimately remained in the vehicle. (Tr. 304.) When Miller answered his door, Steven and Stephon fired multiple shots at him. Miller was struck twice and killed. Watson fled the scene.

Watson was charged with Miller's murder. At trial, the State's theory was that Watson acted as an accomplice. She was convicted as charged and sentenced to fifty years imprisonment, with five years suspended to probation. This appeal ensued.

**Discussion and Decision**

Watson was convicted of violating Indiana Code section 35-42-1-1, which provides that a person who knowingly or intentionally kills another human being commits murder. When reviewing a claim of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses, but will consider only the probative evidence and reasonable inferences supporting the judgment. Drane v. State,

3

867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

Watson claims that there is insufficient evidence to support her conviction because the State failed to establish the requisite element of intent. More specifically, Watson argues that when the State alleges the commission of murder by aiding or abetting, a knowing mens rea is insufficient and the State must prove that the defendant acted with the specific intent that the victim be killed. We disagree with Watson's contention that the State bore a heightened burden of proof as to intent because Watson was an accomplice and not the actual shooter.

Under the accomplice liability statute, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. . . ." Ind. Code § 35-41-2-4. Our supreme court has noted that "there is no separate crime of being an accessory to a crime or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." Sanquenetti v. State, 727 N.E.2d 437, 441 (Ind. 2000). An actor who would have been considered an accessory under the common law now vicariously commits the actual offense. Id. That is, even where the court or jury utilizes the accomplice liability statute to determine guilt, the individual is considered to have been convicted on the weight of his or her own action, and the individual who aids another person in committing a crime is as guilty as the actual perpetrator. Id.

Watson directs our attention to Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000), in which our supreme court reversed convictions for aiding attempted murders due

to insufficiency of the evidence to prove that Bethel had the specific intent to kill the victims. The Bethel Court relied upon Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991) for the "well-settled" proposition that a conviction for attempted murder requires proof of specific intent to kill, and concluded:

> [T]o convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

Bethel, 730 N.E.2d at 1246.

Here, however, the jury need not have found – consistent with Spradlin – that Watson must have possessed the specific intent to kill Miller. The State alleged the commission of a completed murder as opposed to an attempted murder. "The defendant must have had the specific intent to commit murder in order to be found guilty of attempt[ed] murder. There is no comparable requirement for the murder charge." Echols v. State, 722 N.E.2d 805, 808 (Ind. 2000). See also Garrett v. State, 714 N.E.2d 618, 622 (Ind. 1999) (observing that the requirement of a specific intent to kill applies only in attempted murder cases, and not in murder cases where the defendant may be convicted upon a showing of either an intentional or knowing killing).

As to an accomplice, he can be found guilty of murder if he either knew or intended that the victim would be killed by a principal. For example, in Taylor v. State, 840 N.E.2d 324, 336-37 (Ind. 2006), an appeal from the denial of a post-conviction petition challenging an accomplice murder conviction, our supreme court observed: "If

5

Taylor knowingly or intentionally aided and abetted Bowling to kill Anderson, Taylor can be found guilty of murder so long as (1) Bowling killed Anderson and (2) Taylor knew or intended that Anderson would be killed." The Taylor Court explicitly held: "a defendant can be guilty as an accomplice even if the principal does not act 'knowingly or intentionally.'" Id. at 328.

In determining accomplice liability, the fact-finder can consider factors including: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. Wieland v. State, 736 N.E.2d 1198, 1202 (Ind. 2000). A defendant's presence during the commission of the crime or his failure to oppose the crime, standing alone, are insufficient to establish accomplice liability; however, a fact-finder may consider them along with the defendant's course of conduct and his companionship with the one who commits the crime. Echols, 722 N.E.2d at 807.

The probative evidence supporting Watson's conviction includes the following. After Watson was beaten by Miller, she told Carlia Wells, the mother of Miller's children: "I'm going to have my brothers come back and kill your baby daddy." (Tr. 330.) Other witnesses heard similar threats. Watson immediately placed calls to Steven and Stephon, who then arranged rides to South Bend. Watson told her friend, Jarika Studway, that the brothers were on their way and "bringing their .9s with them." (Tr. 31.) Watson was present when Stephon threatened to kill Miller; she did not oppose the plan to kill Miller and in fact subsequently spoke up to stop Stephon from shooting the

6

wrong man.  Ultimately, Watson directed the armed men to Miller's residence and urged them to "do what we came here to do."  (Tr. 303.)  According to one of the State's witnesses, Watson appeared "glad" when she received a telephone call and told the caller that Miller had been killed.  (Tr. 292.)

From the foregoing, the jury could have determined beyond a reasonable doubt that Watson either knew or intended that Miller would be killed and acted in concert with Steven and Stephon to accomplish the deed.  The evidence is sufficient to support her conviction for Murder.

Affirmed.

BAKER, J., and NAJAM, J., concur.