# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 23 2020, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Noah T. Williams
Monroe County Public
Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Golby Desroches,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 23, 2020

Court of Appeals Case No.
19A-CR-1919

Appeal from the Monroe Circuit Court

The Honorable Valeri Haughton, Judge

Trial Court Cause No.
53C02-1705-F3-513

**Baker, Judge.**

[1] Golby Desroches appeals the sentence imposed by the trial court after he pleaded guilty to Level 4 felony burglary and Level 6 felony sexual battery, arguing that the trial court erred in its sentencing and that the sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and the sentence not inappropriate, we affirm.

# Facts

[2] Desroches and M.M. were in an on-again, off-again sexual relationship until it ended sometime in 2017. On May 7, 2017, Desroches and M.M. were spending time at a bar in Bloomington "drinking . . . and having fun and dancing." Tr. Vol. I p. 29. During this time, Desroches saw M.M. drinking a significant amount of alcohol. The two parted ways, and M.M. went home to her apartment to sleep. Later that evening, Desroches went to M.M.'s apartment uninvited. He first knocked on the door, but no one answered. Desroches then opened and climbed through M.M.'s living room window. Once inside, Desroches was confronted by M.M.'s roommate, who led Desroches back to M.M.'s bedroom after Desroches told her that M.M. had invited him over.

[3] Desroches entered M.M.'s bedroom, saw M.M. sleeping, laid down on the bed next to her, and removed her clothing. Desroches then slipped his fingers inside M.M.'s vagina and fondled her. Thereafter, Desroches put his penis inside her vagina and had sexual intercourse with M.M. while she was unconscious. After receiving a call on his cell phone, Desroches stopped what he was doing and left M.M.'s residence through the front door. M.M. woke up later that day and

admitted that she "didn't remember much of what happened the night before." *Id.* at 14. However, M.M. did testify that she "felt . . . weird in [her] genital area, and [she] felt like something had happened[.]" *Id.* M.M.'s roommate told her that Desroches had been at their apartment the night before, so M.M. texted Desroches for clarification.

[4] Desroches eventually responded to M.M.'s texts and repeatedly denied that he had been over at her apartment. M.M. continued to press Desroches on the matter until Desroches admitted that he had come over, but that nothing had happened. Still uneasy, M.M. went to the hospital, completed a rape kit, and discovered that someone had had sexual intercourse with her. After a "couple hours," *id.* at 17, Desroches confessed that he had touched M.M. inappropriately. Desroches then contacted a friend and "told him about [the inappropriate touching] and he said, if there's anything he could do, like talk to her, since me and her were like near each other, and trusted each other[.]" *Id.* at 30. Desroches gave M.M.'s cell phone number to his friend, who contacted M.M. and told her that "[she] shouldn't go to court." *Id.*

[5] Soon enough, on May 9, 2017, Bloomington Police Department Detective Robert Shrake interviewed Desroches, who admitted that he had assaulted M.M. without her consent and after she had consumed alcohol. On May 25, 2017, the State charged Desroches with two counts of Level 3 felony rape and one count of Level 4 felony burglary. Shortly thereafter, Desroches absconded. Desroches was finally arrested on January 26, 2019.

On July 16, 2019, Desroches entered into an open plea agreement, pursuant to which he would agree to plead guilty to Level 4 felony burglary and a new charge of Level 6 felony sexual battery in exchange for dismissal of the other charges, including those from an unrelated cause number. That same day, the trial court sentenced Desroches to an aggregate term of eight years, with six years to be executed in the Department of Correction (DOC) and two years suspended to probation. Desroches now appeals.

# Discussion and Decision

## I. Sentencing Statement

First, Desroches argues that the trial court's sentencing statement is inadequate because it failed to cite evidence in support of its use of certain aggravators and it omitted several mitigators allegedly supported by the record.

Sentencing decisions are left to the sound discretion of the trial court. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind. 2002). We will reverse a sentencing decision regarding certain aggravating and/or mitigating factors only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court and all reasonable inferences drawn therefrom. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

"[T]rial courts are required to enter sentencing statements whenever imposing a sentence for a felony offense." *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012). "The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Id.* "In reviewing a

sentencing decision . . . we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings." *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002). Though the trial court's written sentencing order does not list the aggravators and mitigators, the trial court stated them in its oral sentencing statement, in pertinent part, as follows:

> Mr. Desroches, um, while I think its [sic], I supposed, a good thing that there are no other convictions, I believe that you took advantage of the situation. You went in through a window. The reason you interacted with [M.M.'s] roommate wasn't because you sought her out, or asked if anything was okay, was [amiss], you ran into her. Not physically, but you know you encountered her, kind of by happenstance. You went in through a window, I quite frankly do not believe that you thought that something was wrong. I just don't believe that. I think that you went in through a window because nobody answered the door and you decided that this was something that you wanted to do. And, since you knew she had been drinking, and was very likely intoxicated, um, she was at best, and I think you kind of indicated, groggy and unaware of what was going on. I'm further not convinced that, I think that you know, Mr. Williams said that you weren't, you were not much of a criminal, which may be true, on the other hand, you knew that you had done something wrong, you said you didn't realize you'd done anything wrong, but I don't believe that because, you initially denied it. You denied it to her, when she asked you about it. You denied that anything had happened. Ultimately, the facts proved that something had happened, and because of that, you were kind of confronted with fessing up, I suppose to what had, you had actually done. I think the idea that taking advantage of someone that you trusted, that you had [at] least some relationship with, is a pretty horrible betrayal of trust. Now what you did, that's a violation that is traumatizing, troubling, um, and not something that I can easily dismiss with a basically a symbolic slap on the wrist. I just can't do that. Um, I think it's a very serious crime, quite frankly and the fact that you went through a window to commit it, made sound like not a big deal to some people, but it sounds like a very big deal to me. . . .

***

> Um, I think I probably need to say for the record, that because this is, although you won't be serving that as an executed portion of the sentence, I mean I'm only sentencing him to serve as an executed part the advisory, . . . but because the Court did take judicial notice of the probable cause in the other, in the other case . . . I felt that that was an aggravator and I also, um, well I guess I'll say, just that, although, I, I would have initially been inclined to perhaps sentence him to more, but I did, believe it or not, take into account the mitigators, so for that reason, that's the basis for the Court's sentence. And I feel I should say that on the record, so that everybody is clear on that.

Tr. Vol. I p. 36-37; 41.

[10]    The crux of Desroches's argument is that the trial court failed to cite evidence in support of certain aggravators (the nature of Desroches's criminal actions, a previous probable cause affidavit, and Desroches's betrayal of M.M.'s trust) and failed to take into account mitigators that Desroches claimed were apparent from the record (Desroches's cooperation with authorities and willingness to plead guilty, his lack of any prior criminal conviction, and the presentence investigation report showing that Desroches would benefit from probation rather than incarceration).

[11]    The record is replete with evidence to support the trial court's aforementioned sentencing statement. Though the trial court did not explicitly state the aggravators and mitigators in a written sentencing order, the trial court was clear in its oral sentencing statement so that all parties understood how it would render Desroches's final sentence.

[12]    There is evidence to show that Desroches did betray M.M., there was a prior criminal charge levied against Desroches, and the particular nature and circumstances of this crime were appalling. In its sentencing statement, the trial court admonished Desroches for his heinous acts, for having engaged in criminal behavior in the past, and for having taken advantage of his relationship with M.M. While Desroches claims that he only seeks clarity from the trial court's sentencing statement, this strategy is nothing more than an attempt to have us reweigh the evidence, which we may not do. *See Echols v. State*, 722 N.E.2d 805, 808 (Ind. 2000) (reiterating that "sentencing decisions lie within the discretion of the trial court," which include the trial court's use or non-use of aggravators and mitigators).

[13]    Further, the trial court was under no obligation to give weight to the mitigators or the evidence supporting the mitigators as proffered by Desroches. *See Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003) (holding that "[a] sentencing court need not agree with the defendant as to the weight or value to be given to proffered mitigating facts[]"); *see also Echols*, 722 N.E.2d at 808 (concluding that "a trial court [is not] required to find mitigating circumstances where there are none[.]").

[14]    Though Desroches believes that his willingness to plead guilty and his cooperation with law enforcement were significantly mitigating, the trial court clearly did not agree. And based on the record, the trial court did not err in reaching that determination. First, a trial court need not give excessive weight to a criminal defendant's willingness to plead guilty, especially when he

receives a substantial benefit by doing so. *See Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008); *see also Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007). Here, Desroches had three major felony charges dropped in exchange for pleading guilty and will serve only six years in the DOC. Moreover, the record does not show that Desroches fully complied with law enforcement. Immediately following his interview with Detective Shrake, Desroches absconded and was not arrested until nearly two years after the State charged him with multiple felonies. The trial court decided to not weigh those factors as mitigators, and we find that the trial court did not err in that respect.

[15] Additionally, the trial court simply did not give much weight to the fact that Desroches has no prior criminal convictions and the fact that the presentence investigation report shows that Desroches would benefit from probation rather than incarceration. This was mainly because the trial court believed that the severity of Desroches's criminal actions outweighed any possible mitigating factor. Likewise, we will not second-guess the trial court's decision.

[16] Thus, in looking at the trial court's sentencing statement and the record as a whole, we find that the trial court was not vague in its sentencing statement and that it did not err in finding—or not finding—certain aggravators and mitigators when rendering Desroches's sentence.

# II. Appropriateness

[17] Next, Desroches argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.

[18]     Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The question is not whether another sentence is more appropriate, but whether the defendant's specific sentence is inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19]     For a Level 4 felony offense, the maximum sentence is twelve years, and the minimum sentence is two years. Ind. Code § 35-50-2-5.5. The advisory sentence is six years. *Id.* For a Level 6 felony offense, the maximum sentence is two and one-half years, and the minimum sentence is six months. I.C. § 35-50-2-7(b). The advisory sentence is one year. *Id.* Here, the trial court imposed an aggregate term of eight years, with six years to be executed in the DOC and two years suspended to probation.

[20]     First, as to the nature of the offenses, Desroches entered M.M.'s residence without any invitation or consent to do so. After no one answered Desroches's knocks at the door, he entered the residence through a living room window—a felony in and of itself—and lied to M.M.'s roommate just to get access to

M.M.'s bedroom. In other words, Desroches manipulated the situation so that he could take advantage of M.M. And to that point, Desroches was fully aware that M.M. had consumed a significant amount of alcohol and that she would be more intoxicated than usual. With this knowledge, Desroches fondled M.M. and had unprotected sex with her. And before M.M. awoke, Desroches left her bedroom and escaped through the front door. These actions are tantamount to a betrayal of M.M.'s and M.M's roommate's trust all for the purpose of sexual gratification. What Desroches did was, in blunt terms, abhorrent and psychologically traumatizing. Therefore, we find that the nature of the offenses does not render Desroches's sentence inappropriate.

[21]   Next, as to his character, Desroches has displayed a pattern of deceitful behavior. After being confronted by M.M. with questions about what happened that evening, Desroches lied and said that he did not know what M.M. was talking about. Eventually, Desroches admitted that he was at M.M.'s apartment, but insisted that nothing happened. Then, only after M.M. had completed a rape kit did Desroches admit that he had touched her inappropriately. However, Desroches decided to enlist the help of a friend who contacted M.M. to convince her that she should not go to the police with this information. Moreover, it took the Bloomington Police Department nearly two years before they could find and arrest Desroches, who had absconded after he voluntarily told Detective Shrake what had occurred.

[22]   Though Desroches claims that he willingly cooperated with the police investigation and told officers everything he knew, it is not apparent that

Desroches has fully owned up to his actions or learned the error of his ways. Therefore, we find that Desroches's character does not render his sentence inappropriate.

[23] In sum, we will not revise Desroches's sentence pursuant to Indiana Appellate Rule 7(B).

[24] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.